### JACKSON MARTIN ET AL. *v.* C. D. KELLY.

1. FORECLOSURE SALE. *Rights of purchaser. Mortgage.*
   If a mortgagor's vendee *ante litem* of a parcel of the mortgaged land is
   no party to a foreclosure decree, a purchaser of all the land there-
   under is entitled to be substituted to the mortagees' rights only to the
   amount which he paid and they received for the parcel at the sale.

2. SAME. *Auction of parcels. Subrogation.*
   In such case, if the sale of the land was in parcels, and the purchaser of
   all the parcels is unable to prove the order of sale, or what he bid for
   this one, he may be restricted in the assertion of his rights to the
   least sum bid for a similar parcel.

3. SAME. *Equity of redemption. Purchaser pendente litem.*
   A substituted vendor of the mortgagor, who before the foreclosure suit
   became substituted vendor of the mortgagor's vendee as to this par-
   cel, can pay the purchaser so much of the sum due the mortgagees as
   was assigned to him by the chancery sale, and hold the equity of re-
   demption to the land which he purchased from his vendee pending the
   purchaser's suit.

4. SAME. *Vendor's lien. Purchaser of vendee's interest. Redemption.*
   The purchaser can hold the remaining parcels by paying to a person
   who, after the foreclosure, took the place of the mortgagor's vendor,
   the part of the purchase-money of all the land which was unpaid by
   the proceeds of the parcel sold before this person became substituted
   vendor.

5. SAME. *Interest. Verbal contract. Rule in equity.*
   Equity enforcing verbal agreements to be substituted vendors by persons
   receiving absolute deeds, as if such agreements had been evidenced by
   writing, ten per cent interest, which is legal only in written contracts,
   should be allowed, the verbal agreements being for a higher rate.

6. SAME. *Confirmation. Presumption. Title.*

Unless the foreclosure sale was confirmed before the purchaser's bill to enforce his title thus acquired was filed, it cannot be maintained ; and, in the absence of the mortgagees, although he is the active member of their firm, the sale cannot be treated as confirmed by acts of the parties.

7. SAME. *Reversal. Supreme Court practice.*

In reversing a decree which, on such a bill, erroneously treats him as a creditor holding the mortgagees' claim, the case is remanded in order that he may present any rights which he has dependent on a state of of case not disclosed by the record.

8. SECURITY FOR COSTS. *Extent of liability. Expense of appeal.*

The complainant's surety for the costs in the Chancery Court is liable for the cost of the appeal to which the defendants were compelled to resort to free themselves from the erroneous decree.

APPEAL from the Chancery Court of Montgomery County. Hon. R. W. WILLIAMSON, Chancellor.

In 1869, J. D. Butler contracted to buy land from Mrs. Legrand, who executed a bond for title, but being unable to pay her all the purchase-money, he induced J. M. Doyle to advance one thousand four hundred dollars, on Jan. 23, 1871, and to take a deed from her, absolute in form. Doyle verbally agreed to convey the land to Butler, whenever the latter should repay the sum he had advanced, with fifteen per cent per annum interest. On Nov. 18, 1871, Doyle conveyed the land by absolute deed to Jackson Martin, who paid him one thousand five hundred dollars, the amount Butler then owed, and it was verbally agreed between Martin and Butler that whenever Butler should repay the amount advanced to pay Doyle, with twelve per cent per annum interest, Martin should convey the land to Butler. On April 12, 1873, Butler procured a deed, absolute in form, of six acres of other land, to be made to Martin by James Armstrong, with whom he had months before verbally contracted for the land, at thirty dollars, but as Armstrong refused to make a deed unless Butler would pay him forty-four dollars more, and Butler wanted twenty-six dollars cash, the sum of one hundred dollars was advanced, and it was agreed that Martin should convey this land to Butler, provided within twelve months he was repaid this one hundred dollars, with fifteen per cent per annum interest. On March

14, 1873, Butler who was in possession of the lands conveyed by Doyle and Armstrong to Martin, executed a deed of trust on the the lands and the crops to be grown by him that year, and certain designated personal property, to secure eight hundred and fifty dollars then due by him to J. C. Kelly & Co., a firm composed of J. C. and C. D. Kelly, and for advances during that year. On Jan. 1, 1874, Butler negotiated a sale of one hundred and sixty acres to J. F. Shirley for twelve hundred and fifty dollars. Of this amount, Shirley paid Martin six hundred dollars cash, and gave him his note for six hundred and fifty dollars and interest, receiving from him a bond conditioned to make title upon payment of the note. Martin gave Butler credit for twelve hundred and fifty dollars. J. F. Shirley went into possession of this land, and Butler remained in possession of the balance. In 1874, 1875, and 1876, Martin advanced money and supplies to Butler, and was paid about eight hundred dollars in cotton raised on the land. The balance due on supply account amounted to five hundred and seventeen dollars and ninety-five cents, exclusive of interest. Butler claims that Martin agreed to apply the full proceeds of all the cotton delivered to the land debt, and Martin, denying this, insists that the land by contract was security for the advances. In 1873, 1874, 1875, and 1876, Martin paid the taxes on the land. On October 9, 1876, J. C. Kelly & Co. filed a bill to foreclose their trust deed, making Butler, only, a party defendant. On March 14, 1877, a decree was rendered in that case in favor of the complainants, under which, on May 7, 1877, three hundred and sixty-six acres of the land were sold. At this sale, C. D. Kelly, the active member of the firm, became the purchaser of the three hundred and sixty-six acres, which was sold in parcels, at the aggregate sum of fifty-four dollars. But it does not appear what he bid for each parcel, though some sold for two dollars. The commissioner executed to him a deed, but the sale was never confirmed. On Jan. 19, 1877, Martin, it appears, considered that, after deducting the credit for the Shirley land, Butler owed him one thousand eight hundred and ninety-two dollars and ninety cents; and Butler induced E. D. Brooks to pay Martin this amount. Martin then, at Butler's request, conveyed all but the Shirley

land to Brooks, who was to hold the title as security for re-payment of the amount advanced. Butler, then, being still in possession, received from Brooks a bond for title, conditioned to make a conveyance on payment of the one thousand eight hundred and ninety-two dollars and ninety cents, with interest. Claiming under his purchase at the foreclosure sale, C. D. Kelly filed this bill on June 23, 1877, against Butler, Martin, Shirley, and Brooks, alleging that he was the legal and equitable owner of the land; that the conveyances from Doyle and Armstrong to Martin were simply mortgages, the equities of redemption being in Butler; that the trust deed to Kelly & Co., conveyed and bound this equitable title, that Shirley and Martin both purchased with notice of the trust deed and subject to the incumbrance; and that Martin had been fully paid the debt for which the land was held by him. A decree *pro confesso* was taken against Shirley, and all the other defendants answered. While this suit was pending, in 1878, the contract of sale between Shirley and Martin was rescinded. The former gave up the land, surrendered his bond for title, and the latter gave up his note of six hundred and fifty dollars, and paid him in addition four hundred and one dollars and twenty-five cents for improvements he had made on the tract. In this way, Martin came into possession of these one hundred and sixty acres, and, in order to get possession of the remaining land, Brooks paid four hundred and sixty-seven dollars to Butler, who thereupon gave up possession, surrendered his bond for title, and released all claim. Subsequently, Jackson Martin made an affidavit that C. D. Kelly was unable to answer for costs, and the latter, as required, on Oct. 18, 1879, gave D. L. Sweatman as surety. Much evidence was filed, and the case then set down for final hearing. Without a reference to a master to state an account, the Chancellor, on Aug. 6, 1881, decreed that Martin had been fully paid off, and directed that all the lands be sold, if necessary, to pay the amount due by Butler under the Kelly mortgage, but that the Shirley land now held by Martin should be first sold, and that, if the land should not bring the amount due Kelly and costs, that Martin pay the costs. From this decree Jackson Martin and E. D. Brooks appealed.

*T. C. Catchings*, for the appellant, Jackson Martin, filed a brief and made an oral argument.

1. C. D. Kelly does not allege in his bill that he is the owner of the mortgage, and there is no proof that he is. Yet the Chancellor treats him as the assignee of J. C. Kelly & Co. The decree must, therefore, be reversed. If we regard him as the assignee of the mortgage, and treat the bill as filed for its foreclosure, the decree is still wrong. It is predicated on the erroneous idea that Butler had paid off the whole debt originally due to Martin, leaving his equity of redemption unincumbered, and his right to a reconveyance from Martin perfect and absolute, whereas he paid nothing except by sale of part of the land. If the proceeding is considered as a bill by C. D. Kelly to redeem, based upon his purchase under the decree in favor of Kelly & Co. against Butler, it cannot be maintained as to the Shirley land, because he got no title to that land by his purchase, it being at that time the property of Shirley, who was a *bona fide* purchaser for value, and who was no party to the foreclosure. A decree of foreclosure, if the bill is one to redeem, is certainly wrong. It should have directed a conveyance of the title upon payment by Kelly of the land debt. Besides, as the sale to Kelly was never confirmed by the Chancery Court, he is in no position entitling him to redeem. In no view of the case can the land sold to Shirley, and in 1878 taken back by Martin, be held.

2. If we concede that all the land is subject to Kelly & Co.'s mortgage, the decree is wrong, because it makes that deed prior in lien to the land debt originally due Martin. In such case, Martin should be allowed a prior lien, on the part held by him, for twelve hundred and fifty dollars with interest and taxes, and Brooks a prior lien for so much of the land debt as was due Martin when he bought. Nor was there any authority for the effort by the Chancellor to adjust so-called equities between Brooks and Martin, by having Martin's land first sold. The state of the pleadings neither requires nor justifies it. Besides, it is impossible to know what those equities are. There may be none. If there are any, Brooks may perhaps proceed upon Martin's warranty, but that is not necessary to be decided.

*L. Brame*, for the appellant, E. D. Brooks, argued orally and in writing.

1. The fundamental error in the decree is, that the Chancellor held that the transactions, by means of which Martin became possessed of the Shirley land and Brooks of the balance, were sales by Martin as a trustee, resulting in payments on the two lien debts of twelve hundred and fifty dollars and eighteen hundred and ninety-two dollars and ninety cents respectively, and, at the same time, decreed that the land thus sold was all liable to be again sold to satisfy a lien in favor of the complainant, for the full amount of the debt with interest. If Martin was a trustee, his sales were valid and the land cannot be resold. But he was not a trustee, and he never sold the land. His transaction with Brooks was merely the assignment of the mortgage, which is not extinguished, and is prior to the Kelly & Co. trust deed. The same reasoning applies to the Shirley land. Both Martin and Brooks have priority over J. C. Kelly & Co.

2. C. D. Kelly filed this bill, alleging that he was owner of the land by virtue of his purchase under the foreclosure suit brought against Butler. That sale was not confirmed. The Chancellor decreed that the complainant was not the holder of the title, but held that he was entitled to file the bill and foreclose the trust deed. No amendment of the bill was made. This was erroneous, because there was no allegation that C. D. Kelly owned the trust deed or was entitled to enforce it. There was no proof of this, and it was nowhere alleged that anything was due by Butler to Kelly & Co. on this trust deed. The defendants had no opportunity to contest these questions. If we concede that the complainant was the assignee of the trust deed, and if anything whatever is due Martin and Brooks, or either of them, the bill cannot be maintained for foreclosure merely; the complainant must offer to pay off the prior mortgage. There is no authority to compel Martin and Brooks to foreclose. In fact, there is no occasion for them to do so. They have purchased the mortgagor's equity of redemption, and are in possession.

3. Considering that the complainant is entitled to maintain this bill, either as a purchaser of the lands at the foreclosure

sale, or as assignee of the trust deed, what are the rights of the defendants, Martin and Brooks, as against his claim ? The matter is a simple one, and of easy solution. If we attempt a consideration of the various transactions between Butler and Martin, Brooks and Shirley, in this connection, we are certain to become confused and fall into error. When we conclude that none of these transactions amounted to a payment of the mortgage debt of Martin, it is demonstrated that they are not to be taken into consideration in arriving at the correct amount for which Martin and Brooks have a prior lien on the land. The attitude of the parties, then, to the land, is this : Martin and Brooks have a first mortgage for the full amount of the indebtedness aforesaid, with interest ; Kelly & Co., or C. D. Kelly, have a second mortgage for the amount of their or his debt ; and Brooks has a third mortgage on a part of the land for the amount of the unsecured debt of Butler, which became his by his trade with Martin. The rights of no third parties are involved. J. C. Kelly & Co. can only claim their rights as junior mortgagees. Martin was not personally liable for their debt by reason of having a prior mortgage on the land, and he has done nothing in dealing with the property to make him liable in any sense as a trustee to the parties. Nor has he or Brooks done anything by reason of which they are precluded or estopped from claiming the benefit of the prior lien they hold.

4. Martin cannot hold the land as a *bona fide* purchaser. If he can, the effect will be to place a credit of twelve hundred and fifty dollars and interest on the prior lien indebtedness, leaving only a portion of the lien in the hands of Brooks. This would not be equitable. In the conveyance to Brooks, Martin warranted the title as against this claim of Kelly & Co. As between Martin and Brooks, the former ought to pay off this incumbrance, and, in equity, his portion of the land should be liable to the junior lien at least to the same extent as the Brooks tract. The contract for the sale of the land to Shirley was executory. So, if Martin is a *bona fide* purchaser under him, it is only to the extent of the six hundred dollars. *Lisloff* v. *Hart*, 25 Miss. 245 ; *Harper* v. *Bibb*, 34 Miss. 472 ; *Kilcrease* v. *Lum*, 36 Miss. 569. But Martin and Shirley had

constructive notice of the trust deed. Butler, the grantor, was in possession, and the deed was recorded. *Taylor* v. *Mosely,* 57 Miss. 544.

5. In the court below, no account was taken as between Butler on the one hand and Martin and Brooks on the other. This was necessary in order that the parties might except to the action of the commissioner in allowing or disallowing items.

*Brantley & Smith,* for the same appellant.

C. D. Kelly can only enforce the claim or interest he acquired at the commissioner's sale, and by that sale he failed to acquire such an equity as to give this court jurisdiction of the matter on account of his failure to have the sale confirmed by the court. His should have been a perfect equity, just as in an action of ejectment the plaintiff must have a perfect legal title in order to support his case and give jurisdiction to the court. *Walker* v. *Williams,* 30 Miss. 165. This equitable title must exist and be complete at and before the institution of the suit. *Montàgue* v. *Gaddis,* 37 Miss. 453. The decree under which the commissioner acted did not authorize him to convey the land, hence his action in making the deed to Kelly is without authority of law and void, and could not be of any binding force until approved and confirmed by the court. *Cocks* v. *Simmons,* 57 Miss. 183 ; *Tooley* v. *Kane,* S. & M. Ch. 518; *Gowan* v. *Jones,* 10 S. & M. 164; *Tooley* v. *Gridley,* 3 S. & M. 493. For these reasons, we think the case should be dismissed for want of jurisdiction. C. D. Kelly cannot contend, on account of his connection with the firm of J. C. Kelly & Co., that he is entitled to have the matter reviewed and have a kind of second foreclosure, because if this is an attempt by J. C. Kelly & Co. to foreclose, it is clear that their claim as to Martin and Brooks is barred by the Statute of Limitations, and if it is an attempt by C. D. Kelly through J. D. Butler to redeem, he will be required to pay off all Martin's mortgage before he is entitled to any part of the land. In any view, the decree is erroneous.

*Sweatman & Trotter,* for the appellee.

1. If the allegations of the complainant in his original bill are sustained by the proof, both Martin and Brooks hold the land in controversy as mortgagees, and subject to be conveyed

to the defendant, J. D. Butler (under whom the complainant claims), upon payment of the amount originally advanced by Martin for Butler on the land in question. The claim of Jackson Martin, that the equitable mortgage to him was to secure other advances, is disproved, and the land debt alone is involved in the computation here.

2. Martin denies notice of Kelly's deed of trust on this land, notwithstanding it was filed for record. But if it be true that he did not have notice, how is this to affect the complainant's rights? What bearing can this have upon Butler's rights in the premises, and upon Martin's obligation to convey to him upon his complying with the original contract? How does this pretended want of notice by Martin change his relation to the land or the conditions upon which he originally took the same? We suppose it will not be insisted that Butler would be affected by this pretended want of notice by Martin of Kelly's deed of trust.

3. It is claimed for Brooks that he is a purchaser for value without notice. The deed of trust, under which the land was sold and purchased by the appellee, was executed on March 14, 1873. J. C. Kelly & Co. filed their bill to foreclose on Oct. 9, 1876. There was a decree of the Chancery Court, directing a sale of the land, March 14, 1877. It further appears that on Jan. 19, 1877, and pending this foreclosure suit, Brooks advanced to Martin for Butler eighteen hundred and ninety-two dollars and ninety cents, and took a deed from Martin to the land in question. Conceding this last transaction to have been a purchase by Brooks, he purchased pending litigation about the land, which places him within the rule announced in *Allen* v. *Poole*, 54 Miss. 323. If additional notice to Brooks should be deemed necessary, we submit that actual notice is proved.

4. Martin held title to the Armstrong land in the same way that he held the Legrand land and with the same agreement to convey to Butler. The consideration of the deed from Armstrong to Martin is only thirty dollars, while Martin is seeking to make Butler pay him one hundred dollars. Neither the supply bill in the one case nor the loan in the other can be thus secured.

5. As to the payments made by Butler and others to Martin on the land in controversy, a balance remained in Martin's hands of the proceeds of the land, after satisfying all claims against it, including Kelly & Co.'s deed in trust. And this is in accordance with the views of the Chancellor. He thought it was not right to give the complainant the land, but as Martin had received enough from the proceeds to pay both debts, the Shirley land should be sold to pay the Kelly debt, if Martin did not pay it. Martin could not apply the proceeds of the land to any other purpose than to the discharge of the indebtedness for the money he had advanced for it. *Poindexter* v. *LaRoche,* 7 S. & M. 699; *Windsor* v. *Kennedy,* 52 Miss. 164; *Ogden* v. *Harrison,* 56 Miss. 743; *Pattison* v. *Hull,* 9 Cowen, 747.

*W. L. Nugent,* on the same side, argued orally.

*Nugent & McWillie,* on the same side.

The greater part of the evidence in this cause relates to the question whether the deeds to Doyle and Martin were in equity mortgages or absolute conveyances. The proof on this point is clear. There is nothing in the record to warrant the usurious charges exacted by Doyle and Martin; the latter is not entitled, upon the evidence, to claim more than six per cent on his money, there being no written contract or agreement of any kind for interest. Martin paid Doyle one thousand five hundred dollars, and has no claim for any larger sum; he paid Armstrong thirty dollars on account of Butler's purchase. These two sums constitute the basis of his claim, and, with interest at six per cent and certain sums paid out for taxes, are the only debit charges against Butler. Kelly's deed of trust was recorded, and all the parties to this suit were affected with notice of its existence. Such being the case, there is really but one contention in the cause, and that is as to whether the Shirley or Brooks land shall be first sold to pay the Kelly debt. There can be no difficulty on this score. Martin sold all the lands involved in this suit. He sold Shirley part of the land for twelve hundred and fifty dollars, and part of it to Brooks for eighteen hundred and ninety-two dollars and ninety cents. After returning all his money, and interest and taxes, he had in his hands, when the final decree was entered, of

Butler's money — principal and interest at six per cent — more than one thousand five hundred dollars, the same being the proceeds of the sale of the land mortgaged to Kelly & Co. Clearly the court acted fairly in decreeing that Martin should pay the appellee's debt of less than one thousand four hundred dollars, for he had collected the money by a sale of the land, and had a right to sell for the payment of what was legally due him. But conceding this, counsel say that the court erred in decreeing a sale of the land sold by Martin to Shirley. Shirley had cancelled his trade, and Martin had taken the land back at the price for which it had been sold to Shirley. It was quite proper, therefore, to decree the sale of this land first, if the object was to do equity. Besides, Martin had covenanted in his deed to Brooks, that he was seised in fee simple of the lands, and would defend the title against all persons claiming adversely to him. What good purpose could be subserved by selling Brooks's land, and forcing him to sue on the covenant? There is nothing so obnoxious to courts of chancery as a multiplicity of suits and circuity of action. Why not at once do that which was ultimately to be done before all interests could be adequately protected? And, besides, what was in the way of selling Martin's land under a personal decree?

CAMPBELL, C. J., delivered the opinion of the court.

C. D. Kelly exhibited this bill, claiming to be owner of the land purchased by him at the sale, under the decree in favor of J. C. Kelly & Co. The rights of J. C. Kelly & Co. as beneficiaries, under the deed of trust executed by J. D. Butler to secure his indebtedness to them, are not involved in this suit. Only the rights of C. D. Kelly, as alleged owner of the land, by virtue of the purchase mentioned, are to be passed on. He did not acquire any right as owner to the one hundred and sixty acres of land sold to J. F. Shirley before the suit of J. C. Kelly & Co. was instituted, because Butler had parted with all interest in that, and his transferee was not made a party to the suit, and, therefore, his right was not affected by the decree, and no claim can be asserted against it by reason of the decree and the sale under it. The extent of

the right of C. D. Kelly as purchaser, with respect to the one hundred and sixty acres of land mentioned, is to be substituted to the claim of J. C. Kelly & Co., under the deed of trust, to the amount of it paid by the sum he paid for the purchase of that parcel of land; and, as he is unable to show in what order the several parcels were sold, and what he bid for each, it may be impossible to fix his right in this respect, beyond the sum of two dollars, which was the amount of his bid on some of the parcels. The legal title of the one hundred and sixty acres sold to Shirley is in Jackson Martin, who has the right to pay C. D. Kelly so much of the sum due J. C. Kelly & Co. as was assigned to him by his purchase, and hold the land against his claim as purchaser.

The right of C. D. Kelly, with respect to the land he purchased under the decree, and which is held by E. D. Brooks, is to pay Brooks so much of the debt due Martin from Butler for the whole land, as was unpaid when Martin assigned to Brooks, with accrued interest and taxes. That is to be ascertained by charging the land with the sums paid by Jackson Martin to J. M. Doyle and James Armstrong respectively to obtain title, and interest at ten per cent, and all the taxes paid on the land, and giving credit for the one thousand two hundred and fifty dollars paid by the sale of land to Shirley. As equity affects the parties as if the transaction about the land had been evidenced by a contract in writing, ten per cent interest, which might have been lawfully contracted for in writing, should be allowed, in view of the stipulation of the parties for a greater rate.

The foregoing view of the rights of C. D. Kelly proceeds on the assumption of his ownership, by virtue of his purchase at the sale made in pursuance of the decree in favor of J. C. Kelly & Co. against Butler, but the record confronts us with the fact that the decree was made on March 14th, and the sale was made on May 7th, and this bill was filed in June of the same year, so that no opportunity was afforded for a consummation of the sale, by its confirmation by the court, before this suit was brought, until which it was *in fieri*, and liable to be set aside by the court. There was not lapse of time, from which confirmation might be inferred, nor are all the parties

before the court in this suit, so that we may treat the sale as confirmed by the acts of the parties to the suit of J. C. Kelly & Co. against Butler. C. D. Kelly is not J. C. Kelly & Co., although he was the active member of that partnership. This suit seems to have been brought prematurely, and, if the sale was confirmed by the court after it was instituted, that would not maintain this bill. *Brown* v. *Bank of Mississippi*, 31 Miss. 454 ; *Candler* v. *Pettit*, 1 Paige, 168.

We have been much embarrassed in the consideration of this case, and in determining the proper disposition of it, by the fact that J. C. Kelly & Co. are not parties to it. The Chancellor, rejecting the pretension of C. D. Kelly to be the owner of the land he claimed by his bill, treated him as a creditor holding the claim of J. C. Kelly & Co. against Butler, and decreed accordingly. This is erroneous, for it is not averred or proved that he held the claim of J. C. Kelly & Co., and he did not assert any right except by virtue of his purchase of the land. We can find in the record no support for the view of the case taken by the Chancellor, and reverse the decree. Not knowing but that there may be a state of case not presented by this record, which will entitle the complainant to relief, and as he may have rights of which we are not advised, we remand the cause to the Chancery Court.

After a decree was entered in accordance with this opinion, taxing the appellee with the costs, a motion was made by the appellants' counsel, for a decree against the security given for costs in the Chancery Court.

*T. C. Catchings*, and *Brantley & Smith*, for the motion.

*L. Brame*, on the same side.

The surety is liable not only for the costs of the court below, but of this court also. *Smith* v. *Lockwood*, 34 Wis. 72 ; *Traver* v. *Nichols*, 7 Wend. 434; *Dunn* v. *Sutliff*, 1 Mich. 24. The security is given for " *all* costs accrued or to accrue in such suit." Code 1871, § 572; Code 1880, § 2360. It was a favor to remand the case, which should have been dismissed.

*Sweatman & Trotter* and *Nugent & McWillie*, contra.

CAMPBELL, C. J., delivered the opinion of the court.

The surety for costs is liable for the costs accrued in the case in this court, to which the defendants below were compelled to resort to free themselves from the erroneous decree against them, which the complainant was enabled to obtain by means of the security for costs, but for which his case would have been dismissed. There is nothing in the statute, or the obligation assumed by the surety, limiting his liability to the costs of the court in which the suit was pending when the security for costs was given, and justice requires that he be held liable for all the costs accrued in the case and adjudged against his principal. That is the extent of his undertaking. *Smith* v. *Lockwood*, 34 Wis. 72; *Traver* v. *Nichols*, 7 Wend. 434; *Dunn* v. *Sutliff*, 1 Mich. 24.

*Motion granted.*