WILLIAM F. DAVIDSON *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

| 34 | 51 |
| f64 | 126 |
| 34 | 51 |
| 85 | 145 |

July 23, 1885.

**Railway Company—Fire Kindled by Locomotive—Evidence of Negligent Habit.**—This is an action for damages for the alleged destruction of plaintiff's elevator and its contents by fire escaping from defendant's locomotive engine, on account of its careless and negligent construction and management.   *Held,* that evidence offered to show a "negligent habit" on defendant's part as respects the construction and use of its engines was properly confined to such as tended to show the prevalence of such "habit" *at or about the time* of the fire complained of.

**Same—Evidence of Experts.**—*Held,* that persons who have been employed on and about locomotive engines, and have had to do with them in varying circumstances for lengths of time running from 10 to 25 years as engineers, conductors, or master-mechanics in railroad shops, as also a brakeman and yard-master of three years' service, each of whom, from his situation and the nature of his occupation, appears to have had special advantages, opportunities, and means for observing the nature, operation, and effect of sparks issuing from coal-burning engines, and appears, also, to speak from his own observations so made, are competent to testify

as to the size and effect of sparks issuing from a coal-burning engine, the time during which they would remain live, and the distance at which fire could and could not be communicated by them.

Trial—Instructions Covered by General Charge.—It is not error to refuse to give instructions (though correct) at the request of a party when there is nothing of substance in them which is not, so far as necessary to be given, amply covered by the charge in chief.

Same—Proper Mode of Giving Instructions.—The practice of charging a jury in an orderly, systematic, and consecutive manner upon the whole law of the case in chief, in preference to giving special instructions submitted by counsel, approved.

Appeal by plaintiff from an order of the district court for Kandiyohi county, *Brown, J.*, presiding, refusing a new trial after verdict for defendant. The action was brought to recover damages for the destruction of plaintiff's grain elevators, with their contents, by fire alleged to have been negligently suffered by defendant to escape from one of its locomotives. The defendant denied that the fire was caused by the engine, and alleged contributory negligence on the part of the plaintiff in placing and leaving shavings and other combustibles in, under, and around the buildings. The nature of the evidence introduced and of the exceptions taken is stated in the opinion. The "train-register" mentioned in the third paragraph of the opinion was introduced by defendant under the following circumstances: One Bloomfield, defendant's station agent at Willmar, was the defendant's first witness, and testified (among other things) that but two trains had arrived at or departed from Willmar on the day of the fire and before it broke out; that these were passenger trains with coal-burning engines, and that no switch-engine was employed at that time. On cross-examination he stated that he kept a train-register, showing the arrival of trains, and that it showed the arrival of no trains on that day prior to the fire except those as to which he had testified on his direct examination. The plaintiff's counsel also questioned him as to whether the register did not show the arrival of a certain additional train to those mentioned by the witness, and as to whether it did not fail to mention one of the trains to the arrival of which he

had testified. In answer the witness read an entry from the book. On re-examining the witness, the defendant's counsel offered in evidence that portion of the book covering the day in question. It appeared that the entries were made by the conductors on the arrival of their respective trains, and that the book was the same used by the telegraph operator in reporting arrivals to the train dispatcher. The evidence was admitted, against plaintiff's objection and exception.

J. W. Arctander and Williams & Goodenow, for appellant.

R. B. Galusha, J. Kling, and Bigelow, Flandrau & Squires, for respondent.

BERRY, J. In this action the plaintiff seeks to recover damages for the destruction of his elevator and its contents at Willmar, by fire alleged to have escaped from defendant's locomotive engine on account of its careless and negligent construction and management.

1. The fire occurred on the eighth day of December, 1881. The plaintiff offered to show by a witness that "from the first of March to the first of May, 1881, he noticed that every engine that started out from the yard threw sparks profusely, and further to show that during the summer and fall, up to the time of the burning, the witness noticed on several occasions railroad trains being made up in the yard at Willmar, and starting out, and that on these several occasions he noticed them throwing sparks profusely." The court required the evidence to be confined to what occurred at or about the time of the fire, and the witness was accordingly permitted to state what he had observed at the Willmar yard, as respects sparks, during the fall and winter of 1881, though under this permission he appears to have been able to *testify* only as to what took place during two minutes previous to the fire. If, upon the question involved in this case,—viz., whether, upon the eighth day of December, the plaintiff's elevator was set on fire by sparks escaping from defendant's locomotive through defendant's negligence,—this kind of testimony was admissible at all, (a matter not altogether free from doubt,) we think the trial court was entirely right in confining plaintiff to a time at or about the date mentioned. Obviously there must be some limit as to time. Plaintiff claims that the testimony was admissible for the

purpose of showing a "negligent habit" on defendant's part, and if this is a proper ground for its admission, it is because the *negligent habit* prevailed at or about the time of the fire. The claim that the testimony offered should have been received to contradict defendant's theory that visible sparks cannot escape from a coal-burning engine, is clearly baseless when it is considered that at the time of the offer no evidence had been introduced to support the theory mentioned.

2. The testimony offered to show frequent fires of wood-piles along the line of defendant's road was at any rate entirely irrelevant, in the absence of any evidence adduced or proposed to show that such fires were set by defendant's locomotives.

3. If the plaintiff did not desire to have the train-register in the case, he should have let it alone. After having himself made use of it, and had the witness examine and testify from it, the defendant was entitled to put the book in evidence, that it might speak for itself, and show just what its contents were as to the matters inquired about by plaintiff.

4. It is not important that, at the time when the motion was made to strike out the testimony as to the shavings, introduced by defendant, it had not appeared that they were there at the time of the fire. The alleged deficiency in this respect was subsequently supplied by the witness Stevens. *Berkey* v. *Judd*, 22 Minn. 287; *Deakin* v. *Chicago, M. & St. P. Ry. Co.*, 27 Minn. 303; *Keith* v. *Briggs*, 32 Minn. 185.

5. Several witnesses for the defendant were permitted to testify as to the size and effect of sparks issuing from a coal-burning engine, the time during which they would remain alive, and the distance at which fire could and could not be communicated by them. Some of these witnesses were or had been engineers, some conductors, some master-mechanics or assistant master-mechanics in railroad shops, (several of them had occupied two of these places,) and they had been employed on and about locomotive engines, and had had to do with them in varying circumstances, for lengths of time running from 10 to 25 years. One of the witnesses was a brakeman and yard-master of three years' service. Each of them, from his situation and the nature of his occupation, would appear to have had special ad-

vantages, opportunities and means for observing the nature, operation, and effect of sparks issuing from coal-burning engines in the respects mentioned, and would appear to have testified from his own observations so made.   Their testimony as to sparks, though it would seem to be treated by counsel as all expert testimony, was really in some part to matter of fact as distinguished from opinion; as, for instance, the testimony as to the time during which a spark would remain live, and as to the size of spark which could escape from the engine, depending on the known size of the meshes of the netting, or other spark-arresting contrivances.   See *Elfelt* v. *Smith*, 1 Minn. 101, (125.)   Certainly the persons mentioned may properly be regarded as experts, within the following authoritative definitions of an expert as "one who by practice or observation has become experienced in any science, art, or trade," (Rogers on Expert Testimony, § 1;) "a person having skill, experience, or peculiar knowledge on certain subjects or in certain professions," *(Heald* v. *Thing,* 45 Me. 392;) "one instructed by experience in a course of previous habit and practice or study, so as to be familiar with the subject," *(Nelson* v. *Sun Mut. Ins. Co.,* 71 N.Y. 453;) "a person of large experience in any particular department of art, business or science," *(Dickenson* v. *Fitchburg,* 13 Gray, 546;) and see, also, 1 Greenl. Ev. § 440.

Their testimony, as experts, to matter of opinion was admissible within the rule recognized and applied in *Krippner* v. *Biebl,* 28 Minn. 139.   In that case a witness was permitted to state how far in his opinion a fire in stubble land would be likely to "jump" under certain conditions of wind and vegetation; the witness being shown to have had actual knowledge of such conditions, and sufficient experience of such fires as to the fact of "jumping."   The court says: "We think it is not one of common knowledge, concerning which it could be presumed that the jury could form a judgment as well as a witness, who, from actual experience, had become capable of judging with some degree of accuracy.   We cannot assume that the jurors * * * were possessed of knowledge or experience upon the subject.   The law is thus well expressed in 2 Taylor, Ev. § 1275: 'It may be laid down as a general rule, that the opinion of a witness possessing peculiar skill is admissible, whenever the subject of in-

quiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance.' " See, also, 1 Greenl. Ev. §§ 440, 440a, and Rogers on Expert Testimony §§ 5, 6, 105.

The plaintiff's criticism of the form and some of the details of certain questions propounded to some of these witnesses appear to us refined and technical, rather than practically substantial.

6. In our judgment the trial court instructed the jury fully and fairly upon the law of the case, and the charge was so clear, simple, and explicit that a jury of ordinary intelligence should not have misunderstood or misapprehended it, nor have failed to perceive what they were called upon to determine, or the applicable rules of law by which they were to be guided in arriving at their verdict. If this be so, it was not error to refuse the special requests of the plaintiff. There was nothing of substance in them which was not, so far as it was necessary to be given to the jury, amply covered in the charge. It is much better, if practicable, for a trial court, after due consideration of the requests of counsel, to charge a jury in an orderly, systematic, and consecutive manner upon the whole law of the case in chief, than to confuse them, as is often done, by giving the special propositions submitted by counsel, which, though perhaps correct, present a partial, disjointed, and therefore often misleading view of the law.

Plaintiff's first request involved no proposition of law, but a pure inference of fact, which it was for the jury itself to draw. The second, third, fourth, fifth, sixth, and seventh requests are sufficiently covered by the charge in chief. The eighth request was based upon a misstatement of the evidence. The refusal of the remaining requests is not assigned as error. The instruction given in reference to rubbish about the elevator, as showing negligence, was well guarded, so that if, as the plaintiff claims, the evidence of its connection with the fire was wanting, we are unable to see how the jury could have been misled to plaintiff's prejudice. It may at the same time be observed that in the absence of positive and direct evidence of the origin of the fire, it is not absolutely certain upon the evidence that the rubbish had nothing to do with it.

This disposes of plaintiff's assignment of errors, so far as they require discussion, and the result is that the order denying his motion for a new trial is affirmed.