# MARGARET J. WOXLAND v. NORTHWESTERN CONSOLIDATED MILLING COMPANY. [1]

February 10, 1911.

Nos. 16,930—(216).

**Questions for the jury — verdict sustained by evidence.**

In an action to recover for the death of plaintiff's intestate, caused by the alleged negligence of defendant in setting in motion and operating dangerous machinery without first covering or guarding exposed parts thereof, by reason of which decedent, an employee of defendant, was injured, and from which injuries he subsequently died, it is *held* that the questions of negligence, contributory negligence, and assumption of risk were properly submitted to the jury, and that the evidence sustains the verdict.

**Negligence of fellow servants.**

The question whether decedent's death was caused by the negligence of fellow servants was not presented by the evidence, and the court did not err in denying defendant's request to submit it to the jury.

**Damages not excessive.**

Damages awarded by the jury *held* not excessive.

Action in the district court for Hennepin county by the administratrix of the estate of Ole O. Woxland, deceased, to recover $5,000 for the death of her intestate. The facts are stated in the opinion. The answer was a general denial. The case was tried before Simpson, J., and a jury which returned a verdict in favor of plaintiff for $4,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Brown, Albert & Guesmer,* for appellant.

*James Manahan* and *C. M. Bracelen,* for respondent.

[1]Reported in 129 N. W. 856.

[Note] Injury from projecting screws in moving machinery, see note in 48 L.R.A. 96.

BROWN, J.

Action to recover for the death of plaintiff's intestate, caused, as alleged in the complaint, by the negligence of defendant. Plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial.

Defendant owns and operates a large flour mill in the city of Minneapolis, adjacent to which is located an elevator for the storage of grain. Both are equipped with the machinery usual and necessary to the proper operation thereof. In the basement of the elevator is located a conveyor; that is, a box made of planks and boards, eighteen inches in diameter, in which runs a large spiral or screw, by means of which grain is moved along the conveyor to elevating shafts and thus transferred from bin to bin and to the mill. The conveyor sides and bottom are of two-inch planking, the top or cover of inch boards, and it is elevated from the floor about eight feet, being held in position by supports from the ceiling. For two or three weeks prior to the death of plaintiff's intestate defendant had been engaged in overhauling and repairing its mill, and particularly the machinery located in the basement of the elevator. The conveyor box had been removed to a new position, and the covering, or parts thereof, had been taken off and not returned, though the box had been installed in its new location.

Decedent was in the employ of defendant as an oiler and watchman. His duties were to oil gearings and different parts of the machinery in the basement. Parts of the machinery requiring this service were located above, and other parts in close proximity to, the conveyor. Running boards were placed on a level with the conveyor, upon and by means of which the oilers went from place to place, reaching the running boards by means of ladders provided for that purpose. The running boards were not, however, designed exclusively for this purpose, but were in fact used by the oilers in their work. The repairs in this department had not been completed on the day decedent was injured, yet defendant's manager or foreman directed the machinery set in motion for the purpose of moving certain grain. After the machinery had been started,

decedent in the discharge of his duties set about oiling the different parts. He applied oil to a gearing near one end of the conveyor, and then stepped upon that appliance for the purpose of passing thereon to the opposite side of the basement to oil parts of the machinery there located. As he was walking along upon the conveyor, he stepped into the uncovered part thereof. His foot was caught by the revolving screw, inflicting injuries from which he subsequently died.

Plaintiff thereafter brought this action to recover for his death, charging, in her complaint, that the injury and death were caused by the negligence of defendant in starting the machinery in motion with this dangerous instrumentality uncovered and exposed, without informing decedent of its condition. The complaint also alleged that the basement where the machinery was located was dimly lighted, and that decedent was unable by the exercise of ordinary care to discover the fact that it was uncovered. The effect of this allegation is to negative contributory negligence on the part of decedent, and it is not claimed as one of the proximate causes of his death.

The case was submitted to the jury upon the theory of the complaint. The court instructed the jury in effect that the screw within the conveyor box, revolving with considerable rapidity, was a dangerous machine within the meaning of our statutes requiring such machinery, when practicable, to be covered or guarded, but submitted to the jury the question whether it was so located as to be likely to expose employees to injury by coming in contact with it. The court also submitted to the jury the question whether decedent rightfully made use of the conveyor as a means of passing between different parts of the machinery which he was required to oil, saying that if he was rightfully upon the conveyor on the occasion in question, and the conveyor was so located that it should, under the statute, have been covered, plaintiff was entitled to recover, unless decedent assumed the risks or was guilty of contributory negligence.

It is contended on this appeal: (1) That the trial court erred in refusing to direct a verdict for defendant, on the ground that the evidence wholly fails to establish negligence on the part of defend-

ant, and that decedent's assumption of risk and contributory negligence conclusively appear; and (2) that the court erred in denying the motion for a new trial because of errors occurring on the trial, and excessive damages appearing to have been given under the influence of passion and prejudice.

1. There can be no question but that the revolving screw in the conveyor box, a large steel appliance for transferring and moving grain from one part of the elevator to another, and moved by a powerful agency, is a dangerous piece of machinery, within the meaning of our statutes, and, if located where workmen are likely to come in contact with it in the discharge of their duties, should be guarded and protected as required by law. Nor can there be any serious question that its position in the elevator did in fact, if uncovered, expose employees to the danger of injury therefrom. While it was elevated eight feet above the floor, employees, particularly those charged with the duty of oiling the machinery, had frequent occasion to come in close proximity with it in the performance of their work, and their protection from injury, by stepping or falling into the conveyor through accident or inadvertence, required that it be covered, there being no contention that it was impracticable to do so. At any rate the evidence fully sustains the action of the trial court in submitting this feature of the case to the jury. The evidence is conclusive that it was not completely covered at the time in question. At one end thereof, and near a point where decedent was required to oil certain bearings of the machinery, part of the covering had not been replaced by those making the repairs in this department, leaving a hole sufficiently large to admit a person's foot, into which decedent stepped. The duty to guard and protect machinery of this kind is an absolute one, and is not discharged by the exercise of reasonable care. Glockner v. Hardwood Mnfg. Co., 109 Minn. 30, 122 N. W. 465, 123 N. W. 807. Nor is a partial compliance with the statute sufficient to discharge the obligations thereby created. And as it appears without question that the machinery in this department of the mill was set in motion without first complying with the law by covering the conveyor, defendant was properly found guilty of negligence, and

plaintiff may recover, unless decedent, in making use of the con-
veyor box as a passageway, assumed the risks incident to its un-
covered condition, or was guilty of contributory negligence.  2 Dun-
nell, Digest, § 5895.

2.  A careful examination of the record leads to the conclusion
that the questions of assumption of risk and contributory negligence
were properly submitted to the jury and that the evidence sustains
their verdict.  We find no evidence from which it may be said, as
a matter of law, that decedent was guilty of negligence contributing
to his death.

In passing over the conveyor box we are bound to presume, since
he is dead, that he exercised reasonable care, and that his act in
stepping into the hole in the covering thereof was not because of in-
attention or carelessness.  We find no evidence to the contrary, at
least not of a character to resolve the question into one of law.  2
Dunnell, Digest, § 7032.  Whether decedent assumed the risks inci-
dent to the use of the conveyor as a passageway depends upon the
further question whether he rightfully, by custom, or express or
implied permission, so used it.  There is no evidence that decedent
knew the conveyor was uncovered at the time he attempted to pass
over it, and whether the fact was so apparent and plainly observable
to one in the exercise of reasonable care as to charge him with notice
was on the evidence a question of fact.  It cannot, therefore, be said
as a matter of law, if he had a right upon the conveyor, that he as-
sumed the risk incident to its uncovered condition.  The turning
point on this branch of the case is whether decedent rightfully made
use of the conveyor as a passageway between points for oiling the
machinery.  It was not constructed or designed for that purpose, but
was, by reason of its location and position, a convenient way of pass-
ing from one bearing to another.  It was eighteen inches wide, on
a level with the runway boards or planks extending on either side,
at right angles, making a suitable and convenient passageway.  The
conveyor had always been kept covered, except during the repairs
being made just preceding the accident, and the evidence tends to
show that it had been used by other oilers in the performance of
their work.  It was naturally adapted to such use, and we find no

evidence that walking thereon was necessarily dangerous, or that it had been forbidden by defendant; at least no evidence sufficient to require the jury to so find. And our conclusion is that it was on the evidence a fair question of fact whether in walking upon the conveyor decedent was at a place not necessary or proper in the discharge of his duties, or whether in view of the situation defendant was not bound to anticipate that it would or might be used by oilers and others for this purpose.

It is well settled that the obligations of the master to provide his servants with a reasonably safe place extends to the portion of the premises on which they are required to do their work and such other places thereon and conveniences incident thereto as they are expressly or impliedly invited or permitted to use. Thomas v. Wisconsin Cent. Ry. Co., 108 Minn. 485, 122 N. W. 456, 23 L.R.A.(N.S.) 954; Taylor v. Bush, 6 Pennewill (Del.) 306, 66 Atl. 884, 12 L.R.A. (N.S.) 853. And as the conveyor was not only convenient and facilitated in discharge of the duties of decedent, but was frequently used for the purpose of passing from place to place, without objection from defendant, it cannot be said as a matter of law that decedent forfeited his right of protection by making use thereof on the occasion of his injury. · The question was for the jury.

3. There was no error in the refusal of the trial court to submit to the jury the question whether the accident to decedent was caused by the negligence of fellow servants. The court properly ruled that the fellow servant doctrine had no application to the facts. This department of defendant's mill had been undergoing repairs, a work ordered and directed by defendant. The conveyor box had been moved to a new location, and the cover thereof had not been replaced when the machinery was set into operation. While the work of repairing the mill was performed by fellow servants, defendant failed in the performance of its statutory duty in not re-covering the conveyor, and thus protecting and guarding the dangerous machine contained therein from contact by servants employed in its vicinity, and the act of the superintendent in starting the machinery with the conveyor partly uncovered was the act of defendant, and not that of a fellow servant of decedent. Defendant was bound to know, be-

fore starting the machinery in motion, that it was in suitable and proper condition for operation, and that all its statutory and other absolute duties to its servants had been complied with. Davidson v. Flour City O. I. Works, 107 Minn. 17, 119 N. W. 483, 28 L.R.A. (N.S.) 332, 131 Am. St. 433. A failure in this respect affirmatively appears from the omission to cover the conveyor. It was, therefore, the neglect of defendant, and not that of a fellow servant.

4. Counsel for defendant at the close of the trial presented a large number of special requests for instructions to the jury, which were all refused, except as given in the general charge. The court properly followed the practice commended in Davidson v. St. Paul, M. & M. Ry. Co., 34 Minn. 51, 24 N. W. 324. The questions in issue were carefully covered by the court, and the special requests, so far as pertinent, were sufficiently included in what was said to the jury. We discover from the record no ground for the suggestion that counsel were not informed of the theory upon which the case would be given to the jury. The theory of the case was that outlined by the complaint, and there was no departure therefrom on the trial.

Nor was the court in error in refusing to admonish the jury that an indemnity insurance company is entitled to the same consideration in courts of justice that is accorded to individuals. While it is entirely proper in any case to remind the jury of their solemn duty, and to urge them to give even and impartial consideration to the evidence and determine the issues fairly, it is not absolutely necessary to specially refer to the character of one of the parties, or one interested in the action, for the purpose of removing from the jury a possible prejudice. Presumptively there is no such prejudice; but if it exists in any particular case, and is acted upon by the jury, the trial court will administer the proper relief for such misconduct. There is nothing in the record before us indicating a necessity or propriety of a special admonition of this kind.

5. Decedent left surviving him a wife, but no children. He was thirty-eight years of age; plaintiff, his wife, thirty-two. He was strong and healthy, and provided comfortably for himself and also his wife, whose health is somewhat impaired. The jury awarded $4,500. The claim that the amount is excessive is not sustained.

Nor did the court commit reversible error in charging the jury upon this branch of the case.

This covers all questions requiring special mention, and results in an affirmance of the order appealed from.

Order affirmed.

SIMPSON, J., having heard the case below, took no part, and JAGGARD, J., absent, took no part.