## MOSSRUD, Respondent, vs. LEE, Appellant.

*April 13—May 2, 1916.*

*Negligence: Sale of poisonous liquid: Labeling: Violation of statute: Death of live stock: Proximate cause: Contributory negligence: Questions for jury.*

1. The sale of a poisonous liquid "quack grass destroyer" without proper label and without the purchaser being made aware of its dangerous character, in violation of sub. 5, (a), sec. 1419, Stats. 1913, was negligence *per se.*

2. In an action for the value of cows which died as a result of eating grass on which such poisonous liquid had been applied, it being undisputed that plaintiff and his son had made three separate purchases of the liquid from defendant, that on the last occasion it was not labeled as the law required, and that the liquid then purchased had been applied to the grass which the cows ate, it was not error to confine the jury, in answering the question of defendant's negligence, to the facts in respect to the last sale,— the jury being free to consider, in answering a separate question as to whether negligence in that sale was the proximate cause of the death of the cows, all the evidence in the case, including that which tended to show that plaintiff knew from the circumstances of the first and second purchases and from the effect of the liquid on quack grass that it was dangerous to permit cattle to eat grass which had recently been treated therewith.

3. Findings by the jury in such case that defendant's negligence in respect to the last sale of the liquid was the proximate cause of the death of the cows, and that plaintiff was not guilty of contributory negligence, are *held* to be sustained by the evidence.

Appeal from a judgment of the circuit court for Vernon county: E. C. Higbee, Circuit Judge. *Affirmed.*

Action to recover for some cows, claimed to have been fatally poisoned by negligence of defendant.

The pleadings presented for trial the question of whether defendant was negligent to plaintiff's damage, the amount of the damage, and whether he was guilty of contributory negligence in respect to the matter.

Plaintiff was a farmer. In June, 1913, he purchased of defendant, a dealer in farm supplies, a jug of liquid called "Quack Grass Destroyer" for use in killing quack grass on his place. The jug was filled from a barrel. Defendant had in stock a quantity of large labels, four and one-half inches long by three and one-half inches wide, which had been furnished him for use in labeling the containers of the "Destroyer" upon deliveries being made to customers. The labels had printed thereon, in large letters, the words "Quack Grass Destroyer," "Poison," with a picture of a human skull and cross-bones, full directions for applying the mixture, and a warning to keep it away from stock. Such a label was not placed on the particular container. Instead thereof defendant used a small druggist's label, two and one-half inches long by one and one-half inches wide. Printed thereon, in red letters, was the word "Poison," with a picture of a human skull and cross-bones, and written under it were the words "Quack Grass Destroyer."

The evidence was conflicting as to what was said between plaintiff and defendant at the time of the transaction. The former testified that he was not told that the mixture was poisonous to live stock or anything to warn him in respect to the matter. A short time after the first purchase, plaintiff obtained of defendant one or two jugs more of the "Quack Grass Destroyer." There was evidence tending to prove that no label was used warning plaintiff of the dangerous character of the stuff. About August 1st, thereafter, his son, by his

directions, obtained of defendant, personally, three jugs of the "Destroyer." The evidence was, without conflict, that no label was used on any one of the jugs and there was evidence tending to prove that no warning was given of the dangerous character of the liquid on the last two occasions and that neither plaintiff nor his sons knew that the stuff would poison stock until the damage occurred. One of plaintiff's sons put the mixture on a small piece of quack grass, in an oat field, after the crop had been harvested and put in stack, and the same or another son, a few days thereafter, turned the cattle into the field. Eight cows died from eating the grass to which the mixture had been applied. What the sons did was by direction or approval of plaintiff.

At the close of the evidence, counsel for defendant requested the court to submit to the jury questions as follows: (1) Was the defendant guilty of any want of ordinary care that was the proximate cause of the accident? (2) Was the plaintiff informed when he made the first purchase, that the quack grass destroyer was a poison and dangerous to cattle? (3) Was the plaintiff guilty of any negligence which contributed to the accident? (4) Ought the defendant in the exercise of reasonable or ordinary care to have foreseen that an injury to the plaintiff's cattle might occur from a failure to label the last purchase of the quack grass destroyer? (5) Could the plaintiff, by the exercise of reasonable or ordinary care, have foreseen and prevented the accident? The request was refused except as the questions were included in the following: (1) Was the defendant wanting in the exercise of any ordinary care in making the sale of the three gallons of "Quack Grass Destroyer" on or about the 1st day of August, 1913? (2) If you answer question number 1 "Yes," then was such want of ordinary care the proximate cause of the death of the plaintiff's cows? (3) If you answer question number 1 "Yes," then was plaintiff or his son wanting in the exercise of ordinary care that contributed to

the death of said cows? (4) What was the reasonable market value of the eight cows lost by plaintiff on the 20th day of August, 1913?

The questions were all answered in favor of plaintiff, the value of the cows being placed at $450, and judgment was rendered accordingly.

*Frank Winter,* for the appellant.

*J. Henry Bennett,* for the respondent.

MARSHALL, J. Was there sufficient evidence to carry the question of defendant's negligence to the jury? That must be answered in the affirmative. The sale of such a poisonous substance as that in question, without the vendee being made aware of its dangerous character and the container being plainly labeled with the name of the substance, the word "Poison" and the name and address of the person, firm, or corporation dispensing the substance was, at the time in question, expressly prohibited by sub. 5, (a), sec. 1419, Stats. 1913, and violation of the prohibition made punishable as a misdemeanor. Such statute having been enacted for the protection of life and property, a violation of it, under a very familiar rule, is negligence *per se.* So there can be no question but what appellant was guilty as the jury found.

The court did not commit error in the instructions by confining the jury in answering the question of negligence of appellant to the facts in respect to the last sale. Whether such negligence was the cause of the damage which occurred is another question and was submitted as such.

On the subject of whether negligence of appellant in respect to the last sale of "Quack Grass Destroyer" was the proximate cause of what occurred to respondent's stock, the jury were left free to consider all the evidence in the case bearing on the question. If they were, or ought to have been, satisfied that respondent knew, from the circumstances of the first and second purchase of the destroyer, and the effect of

the mixture on quack grass, that it was poisonous to live stock, in case of their being permitted to eat grass which had been recently treated with it, then they might well have found in appellant's favor on the second branch of the case. They were evidently not so satisfied. It may be they ought to have been. Certainly there are circumstances pointing very strongly that way and there is much force in the argument of counsel for appellant in respect to the matter; but it seems there was sufficient basis for a contrary view that we ought not to hold the trial court was clearly wrong in deciding that it was within the province of the jury to settle the matter.

What has been said in respect to whether there was room in the evidence to warrant the jury in finding that appellant's negligence was the proximate cause of the damages suffered by respondent, bears on the contention that the finding of the jury on the subject of contributory negligence is entirely unsupported by the evidence. As we view the case, if there was a jury question in respect to the former proposition, there was, under the circumstances, as to the latter. The evidence, circumstantial and direct, is not very satisfactory on either branch of the case, except that of the appellant's negligence and respondent's damages; but it requires a pretty strong, clear case to warrant this court in reversing the trial court on the question of whether the evidence presents a field for jury duty to determine the facts. We are not satisfied that we have such a case here. The general manner in which appellant dispensed the "Destroyer;" his failing at any time to fully comply with the statute and failing on the last occasion of a sale, and perhaps on the second, to comply with it at all, as the jury had a right to find from the evidence, may reasonably have lulled respondent into security or failed to efficiently bring to his attention the fact, as to the dangerous character of the mixture when used as it was.

*By the Court.*—The judgment is affirmed.