# LUCY AGNES FARRELL v. G. O. MILLER COMPANY.[1]

October 15, 1920.

No. 21,937.

**Sale of gasolene — purpose of statute — liability follows violation.**

1. Section 8764, G. S. 1913, relating to the sale of gasolene, is intended to protect persons from dangers arising from mistaking gasolene for something else. If the disobedience of the statute results in injury to one for whose protection it is passed, liability follows.

**Violation of statute proximate cause of injury.**

2. The evidence justified the jury in finding that defendant's disobedience of the statute was the proximate cause of the injury to plaintiff.

**Liability not affected by efficient intervening cause.**

3. Defendant sold and delivered gasolene in a can not colored or tagged as required by statute and the can was placed by a third person beside other cans containing kerosene. The act of such person was not an efficient intervening cause of the injury to plaintiff, relieving defendant from liability.

**Contributory negligence not proved.**

4. Assuming that contributory negligence is a defense to an action founded on a violation of the statute, the evidence fell short of conclusively establishing its existence.

**Lighting a fire with kerosene.**

5. A person who uses kerosene in lighting a fire is not necessarily guilty of negligence, though a distinction is to be drawn between its use for lighting a new fire and its use for reviving one partially extinct.

**Charge to jury.**

6. There was no error in the instructions to the jury or in the refusal to give certain requested instructions, because some were sufficiently covered by the charge as a whole, while others were not supported by any competent evidence, and others were open to the objection that they required the jury to consider whether certain inferences might not be drawn from a particular state of facts they might find to exist.

Action in the district court for Goodhue county to recover $50,000

[1] Reported in 179 N. W. 566.

for personal injuries. The answer alleged negligence on the part of plaintiff. The case was tried before Johnson, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $9,640. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*P. B. Green* and *A. J. Rockne,* for appellant.

*Mohn & Mohn,* for respondent.

LEES, C.

Plaintiff was severely burned while lighting a fire in a cook stove, and brought this action to recover damages on the ground that defendant, without complying with section 8764, G. S. 1913, had sold and delivered gasolene to her brother Thomas, whose housekeeper she was, and that, in the belief that the gasolene was kerosene, she had used some of it to start the fire. The trial resulted in a verdict in her favor, and defendant appeals from an order denying its alternative motion for judgment notwithstanding or a new trial.

Defendant conducted a general store at White Rock in Goodhue county, this state, and for a period of about two years prior to the accident had employed one Anderson to take orders for and make deliveries of merchandise to neighboring farmers, of whom Thomas Farrell was one. Two 5-gallon metal cans, painted red, were kept in the basement of the Farrell farm-house, which was lighted in part by a gasolene plant, the tank in the lighting plant being filled from time to time with gasolene from these cans. Five gallon gray metal cans, belonging to defendant and containing kerosene oil, were kept in a shed in the rear of the house. Plaintiff ordered the gasolene and kerosene which defendant furnished. She testified that, when Anderson began to deliver the oils she ordered, he was directed to place the kerosene in the shed and the gasolene in the red cans in the basement, and that he invariably did so, until he made the last delivery prior to the accident. This testimony was contradicted by Anderson, who testified that he sometimes did so, but at other times left it in the can in which he brought it from defendant's store, following directions given him by plaintiff or her brother.

On or about December 15, 1917, plaintiff gave Anderson an order for 5

gallons of high-test gasolene and for some other articles. A gray metal can, in which to bring the gasolene, was either given him by plaintiff, or she directed him to get it from the shed where the kerosene cans were kept. On December 18 or 19, he returned to deliver the articles ordered. The gasolene had been placed in the can Anderson had obtained at the Farrell farm. Anderson testified that a shipping tag was attached to the can and that he wrote on it in pencil: "5 gallon best gasolene;" that he found no one at the Farrell house when he arrived; that he placed all of the articles ordered, except the gasolene, in the kitchen, and that he left the can of gasolene on a cement walk leading from the kitchen to the shed. One Germer, a farm hand employed by the Farrells, testified that Anderson set the can just inside the door of the shed and that later he (Germer) placed the can near two kerosene cans in the shed, where it remained until after the accident, and that he did not know that the can contained gasolene. Plaintiff and her brother were at Red Wing when the gasolene was delivered and were not informed that it had not been placed in the red cans in the basement, or that it was in one of the gray cans in the shed.

On Saturday, December 29, plaintiff filled some lamps, a lantern and the tank of an oil stove from a gray metal can in the shed. The can was then full. She thought it contained kerosene. She knew that the gasolene she had ordered on December 15 had been delivered and that it was always brought in a can similar to the one from which she filled the lamps. She made no effort to learn whether the can contained kerosene or gasolene. When the lantern was lighted on Saturday night, it popped and was extinguished by the farm hand who was using it. It did not appear that plaintiff was told of this incident. At about 5 o'clock on Sunday afternoon she went into the kitchen to prepare the evening meal. There was testimony that there had been a fire in the cook stove until 1 or 2 o'clock in the afternoon and that at 5 o'clock there was neither fire nor embers in the stove. Plaintiff placed some paper and light willow wood in the fire box, went to the shed, poured about a third of a teacupful of oil from the can from which she had filled the lamps on the previous day, poured it over the wood and paper and struck a match. Immediately there was an explosion and the flames set fire to her clothing and burned her body in many places. Later in the day the oil stove was

lighted and there was no explosion. The following morning Mr. Farrell examined the can from which plaintiff had poured kerosene, as she supposed, and found that it contained gasolene instead and that from 3½ to 4 gallons remained in the can. A sample was taken and submitted for examination to a state oil inspector, who pronounced it to be high-test gasolene.

1. Defendant challenges the sufficiency of the evidence to support the verdict, asserting that plaintiff knew, or was bound to know, that the gasolene she ordered was brought and left in a gray metal can. She admitted that she knew that Anderson had taken such a can on December 15, and that when gasolene was ordered he always brought it in a similar can, but denied knowledge of the fact that he had left it in the can in which he brought it on December 18 or 19. There was no delivery when the can was filled at defendant's store. It was defendant's duty to cause the gasolene to be placed in one of the red cans in the Farrell house, or at least to leave it on the premises in a red can. Under the statute defendant, in selling and delivering gasolene, was required to cause it to be placed in a receptacle of a bright red color, tagged and labeled in large plain letters with the name of the contents. Plaintiff had a right to assume that the directions given in the statute would be obeyed. She neither knew, nor was bound to know, that the statute had been disobeyed.

In a well considered case, it was held that where the laws of a state, enacted for the protection of the public, prescribe certain precautions to be observed in handling and labeling the volatile oils distilled from petroleum, one injured by an explosion of gas from such oils establishes a cause of action by showing a breach of the statutory requirement, that such breach was the proximate cause of the injury and the damages sustained thereby. Peterson v. Standard Oil Co. 55 Ore. 511, 106 Pac. 337, Ann. Cas. 1912A, 625. The principle which is applicable is tersely stated in Schaar v. Conforth, 128 Minn. 460, 151 N. W. 275:

"If the disobedience of the statute results in injury to one for whose protection it was passed, liability follows."

This principle has been applied to the sale of poisons, which is also regulated by statute, analogous to the statute now under consideration. Osborne v. McMasters, 40 Minn. 103, 41 N. W. 543, 12 Am. St. 698; McCrossin v. Noyes Bros. & Cutler, 143 Minn. 181, 173 N. W. 566;

Mossrud v. Lee, 163 Wis. 229, 157 N. W. 758; Burk v. Creamery Package Mnfg. Co. 126 Iowa, 730, 102 N. W. 793, 106 Am. St. 377. The duty imposed upon defendant by the statute was one owing to plaintiff. The statute was enacted to protect persons in her situation against the very danger to which her injury is attributable. The dangerous character of gasolene is illustrated by the following testimony of Dr. Hortvet, an expert witness for defendant:

"Gasolene is one of the most mischievous things I have around the laboratory. I have to keep it shut up all the time like a dangerous criminal," and is referred to in Dahl v. Valley Dredging Co. 125 Minn. 90, 145 N. W. 796, 52 L.R.A.(N.S.) 1173.

2. If Anderson had left the gasolene in a red can, plaintiff would have been warned of the danger of using it as she did. It was said in Moores v. Northern Pac. Ry. Co. 108 Minn. 100, 121 N. W. 392, followed in Wiles v. G. N. Ry. Co. 125 Minn. 348, 147 N. W. 427, that in its last analysis the question of proximate cause is to be solved by a practical consideration of the evidence and the application of good common sense on the part of the jury. The evidence in the present case was sufficient to justify the jury in finding that defendant's negligence was the proximate cause of the injury to plaintiff.

3. The act of the farm hand in placing the can of gasolene beside the kerosene cans in the shed was not such an efficient cause intervening between defendant's wrongful act and plaintiff's injury as to free defendant from liability. Such act was an incident to defendant's negligence, or at most a mere contributing cause, and the rule that there may be a recovery of damages from the one guilty of the first wrong, notwithstanding the succeeding negligence of another united in producing the injury, must be applied. Gillespie v. Great Northern Ry. Co. 124 Minn. 1, 144 N. W. 466; Purcell v. St. Paul City Ry. Co. 48 Minn. 134, 50 N. W. 1034, 16 L.R.A. 203; Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279.

4. The evidence does not conclusively establish plaintiff's alleged contributory negligence, assuming that this is a defense to an action based on the violation of a statute like the one here involved. See Dusha v. Virginia & Rainy Lake Co. 145 Minn. 171, 176 N. W. 482; Morrison v. Lee, 22 N. D. 251, 133 N. W. 548, 38 L.R.A.(N.S.) 412. The jury

might well find that she did not know and had no reason to suspect that any of the cans in the shed, where only kerosene was kept, did not contain kerosene. In filling the lamps the day before the accident, she would not necessarily discover that the can contained gasolene and not kerosene. The difference in the appearance and odor of the two oils is not so marked as to enable the average person to distinguish them at all readily. The jury was not bound to find that plaintiff was negligent in using oil to start the fire in the kitchen stove in the manner and under the circumstances disclosed by the evidence. A person who uses kerosene in kindling a fire is not necessarily guilty of negligence, though in some of the cases a distinction has been made between its use in kindling a new fire and its use in reviving a partially extinct fire. Ellis v. Republic Oil Co. 133 Iowa, 11, 110 N. W. 20; Waters-Pierce Oil Co. v. Deselms, 18 Okla. 107, 89 Pac. 212; Riggs v. Standard Oil Co. 130 Fed. 199; Fairbanks Morse & Co. v. Gambill, 142 Tenn. 633, 222 S. W. 5. If there was fire in the stove when plaintiff poured oil on the wood, a flame would immediately have flashed up, according to the testimony of defendant's expert witnesses. Plaintiff testified that there was no flash until after she struck a match to light the fire.

5. We cannot sustain the contention that the oil plaintiff used may have been kerosene for aught that appears in the evidence. The testimony of the plaintiff's brother, and of the state oil inspector already referred to, showed to a reasonable degree of certainty that the oil was gasolene, and is not overcome by the inference that there would have been an explosion when the oil stove was lighted if it contained gasolene.

6. We find no error prejudicial to the defendant in the instructions to the jury or in the court's refusal to give the special instructions requested. The court did not assume that it was established beyond dispute that the oil plaintiff used was gasolene, but instructed the jury to find for defendant if satisfied that it was kerosene.

Some of the requested instructions assumed that there might have been live coals in the stove when plaintiff poured the oil on the wood. There was no evidence that there were, except an alleged statement by plaintiff's brother to the town clerk and a deputy fire marshal. The brother denied that he made the statement, and, of course, even if he had made it, it would not be competent evidence in the nature of an admis-

sion binding upon plaintiff. The requested instruction that plaintiff could not recover if she knew, or, in the exercise of reasonable care, should have known, that the oil she used was gasolene, was properly refused. For reasons already stated, the evidence would not sustain the conclusion that she was chargeable with notice of that fact.

We find nothing of substance in the requested instructions not sufficiently covered by the charge, which was given in conformity with the practice commended in Davidson v. St. Paul, M. & M. Ry. Co. 34 Minn. 51, 24 N. W. 324, and Woxland v. Northwestern C. M. Co. 113 Minn. 440, 129 N. W. 856. Those relating to plaintiff's alleged negligence in failing to make a sufficient examination of the stove before she poured the oil on the kindling were open to the objection that they required the jury to consider whether certain inferences might not be drawn from a particular state of facts they might find to exist. Kellogg v. Village of Janesville, 34 Minn. 132, 24 N. W. 359; Bolstad v. Armour & Co. 124 Minn. 155, 144 N. W. 462. There was no error in refusing the instructions as to the right of the jury to disregard the testimony of a witness who had knowingly testified falsely with respect to a material matter. As a general thing such an instruction is of doubtful practical value, Greenfield v. Unique Theatre Co. 146 Minn. 17, 177 N. W. 666. We find nothing in the record which entitled defendant to have the instruction given.

Other assignments of error require no discussion. We find nothing of which defendant may justly complain, and accordingly the order appealed from is hereby affirmed.