# BENJAMIN LICHT & COMPANY v. AMERICAN RAILWAY EXPRESS COMPANY.[1]

May 12, 1922.

No. 22,716.

**Principal and agent — verdict sustained by evidence.**

1. Evidence tending to show that, in response to a call by telephone received at defendant's office, a man came to plaintiff's store, said "express," took two packages of valuable skins and placed them in a wagon lettered "American Express" after writing his initials upon a receipt for the skins in a book furnished by the defendant to plaintiff, will support a verdict that the man was defendant's agent and had authority to receive the skins as such agent.

[1]Reported in 188 N. W. 219.

**Carrier—notice of loss—error of 3 days in date of delivery.**

2. The purpose of notice of loss of goods delivered to a common carrier for transportation is to afford the carrier an opportunity to investigate claims before they become stale. A discrepancy of three days in the date of delivery specified in the notice and the date specified in the complaint and established by the evidence is not fatal to the right of recovery.

**Refusal to give requested instructions.**

3. If there is nothing of substance in requests for special instructions which is not fairly covered by the general charge, there is no error in refusing to give the instructions, although they may state the law correctly.

Action in the district court for Hennepin county to recover $1,995 for loss of a shipment of skins by defendant carrier. The case was tried before Bardwell, J., and a jury which returned a verdict for $2,139.90. From an order denying its motion for a new trial, defendant appealed. Affirmed.

*Gilger & Babcock,* for appellant.

*George B. Leonard,* for respondent.

LEES, C.

This was an action to recover the value of 285 skunk skins alleged to have been lost after they were delivered by plaintiff to defendant for transportation to a dyer of furs in Brooklyn, New York. The defense was that the skins had not been received by defendant. The jury returned a verdict in favor of the plaintiff for $2,139.90. Defendant has appealed from a denial of its motion for a new trial.

The sufficiency of the evidence to warrant the jury in finding that the skins were delivered to an employe of the defendant authorized to receive them presents the only serious question to be determined. The principal witness for the plaintiff was Bessie Ravitzky, a young woman employed as a clerk in his store during the month of February, 1920. In substance, this was her testimony: On February 3, 1920, she called the defendant's office by telephone and told the person who answered the call that plaintiff had a valued shipment to

be made. Later in the day an expressman came to plaintiff's store, but, on learning that the skins were to be carried to Brooklyn, said it was useless to take them because of a snow blockade, and the skins, which had been placed in two gunny sacks, tagged and addressed for shipment, were left in the store. Anticipating that they would be taken, the witness had filled out a receipt in a book furnished by defendant. She dated it February 3, 1920. Early in the forenoon of February 6 the witness called the express company again, substantially repeating her message of February 3. At about eleven o'clock, a man came into the store and said "express." The manager pointed out the two bags of skins and the man took them away after writing his initials "J. C. B." in the receipt book, following the entries made by Miss Ravitzky on February 3. When he left, she went to the door, opened it for him and noticed a wagon backed up in front of the store. She described it as a wagon with a wire body and two gates at the rear. The words "American" or "American Express" were lettered upon it. She did not know the man and never had seen him before. He wore no uniform or badge, but had a button of some sort on his cap.

Plaintiff's manager was his only other witness. His testimony was confined to a description of the skins, the manner in which they were packed and addressed for shipment, and a general description of the man who took them away. He had no conversation with the man, but heard him call out "express" when he entered the store. It appeared that both witnesses ceased to be employed by the plaintiff shortly after he learned that the skins had not been received by the consignee. This information came to him in a letter dated February 17, acknowledging receipt of his letter of advice of February 3. On March 5 plaintiff notified defendant that the consignee had not received the shipment and requested that it be traced. On April 13 Miss Ravitzky gave defendant a signed statement not materially different from her testimony except that she stated she did not know the time of day when the man called for the skins. On April 26 plaintiff, by affidavit, entered a formal claim with the defendant for the value of the shipment. On May 26 he brought this action, alleging that the skins were delivered to defendant on or

about February 6. In his letter of March 5 and again in his affidavit, he gave the date as February 3. The case was tried in April, 1921.

Defendant's chief telephone operator produced at the trial a slip showing the receipt of Miss Ravitzky's message of February 3. No record of the alleged message of February 6 was produced. About two weeks before the trial all slips showing telephone messages received more than a year prior thereto were destroyed in accordance with defendant's usual practice. Defendant had no record of the shipment in question. The testimony of defendant's witnesses tended to show that all "pickups" of valued merchandise in the district where plaintiff's store is located were made by a driver assigned to the route. There was but one wagon in service in this district to handle valuable goods such as furs. It had an inclosed—not a wire —body. It was used in practice to deliver packages in the morning and to pick them up in the afternoon. A man named Viken was the driver. He had a helper who accompanied him on his trips. He was not positive as to the name of his helper during the first week in February. He recalled no one whose initials were J. C. B. He admitted that his helper sometimes got packages and brought them out to the wagon alone. None of the helpers were called as witnesses. Defendant showed that it had no one in its employ as a driver or helper in the month of February whose initials were J. C. B. Drivers were furnished with badges to identify them and were instructed to wear them on their caps. The foregoing is an outline of the material evidence bearing on the principal issue in the case.

1. Referring to the rule that one who deals with an agent cannot rely on his bare assumption of authority, but must ascertain that he is in fact the agent of him for whom he assumes to act, defendant asserts that, aside from his utterance of the word "express," there is no evidence that the man who got the skins was its agent. The assertion is hardly warranted. According to Miss Ravitzky's testimony, the man came soon after she called defendant's office on February 6. It is a fair inference that he came in response to the call. Apparently he knew that a receipt must be given, and, without explanation or direction, signed for the packages in the proper place in the book defendant had furnished. The wagon to which

he carried the packages was apparently one of defendant's wagons. If he was in charge of it, the inference would be justified that he was defendant's agent. Fransen v. Kellogg Toasted Corn Flake Co. 150 Minn. 54, 184 N. W. 364; Reel v. Adams Express Co. 27 Pa. Super. St. 77. Taking all the facts and circumstances into consideration, we hold the evidence sufficient to support a finding that the man was one of the defendant's employes who came with authority to receive the packages.

2. Defendant contends that there can be no recovery because of the mistake in the date of the notice and claim of loss. The terms of the contract under which defendant received goods from plaintiff were those found in the standard form of non-negotiable express receipt. One of the terms was that notice of loss must be given and a written claim made within four months after a reasonable time for delivery elapsed. A similar provision in a bill of lading was considered in Carbic Mnfg. Co. v. Western Exp. Co. 149 Minn. 467, 184 N. W. 35. The purpose of such notice is to afford the company an opportunity to investigate claims before they become stale. The notice was given in time. If there was any imperfection in it, it was the reference to the date of the shipment. This is of no avail to defendant, for within four months this action was brought upon a complaint alleging the date of delivery as "on or about February 6, 1920." This was timely and sufficiently definite notice to defendant to enable it to ascertain the facts when they were still fresh in the recollection of those who might have had anything to do with the shipment. Nearly a year elapsed before the case was tried, hence defendant had ample opportunity to make a thorough investigation before going to trial. We are not impressed with the contention that defendant was misled by the discrepancy in the dates, particularly in view of the fact that one of its clerks testified that he made search over a period beginning February 1 and ending February 15 in an endeavor to trace the shipment.

3. We have examined defendant's requests for instructions in the light of the charge given on the subject of an agent's authority. In substance the court charged that plaintiff could not recover, unless it appeared by a fair preponderance of the evidence that the

packages were delivered on or about the day in question to one of defendant's representatives, agents or servants authorized to receive them. There was no direct evidence of agency. The requested instructions called attention to that fact; to the burden of proving, and the weakness of plaintiff's proof of authority; to his failure to investigate, and ascertain whether the professed agent was in fact one of defendant's drivers; and to the principle that, where one of two innocent persons must suffer a loss through the fraud of another, he who by his negligence made possible the perpetration of the fraud must suffer the loss. There was nothing of substance in the requested instructions which was not fairly covered by the general charge. It follows that defendant cannot base a claim of prejudicial error on the court's refusal to give them, even though they may have been correct statements of the law. Davidson v. St. Paul, M. & M. Ry. Co. 34 Minn. 51, 24 N. W. 324; Woxland v. N. W. C. Milling Co. 113 Minn. 440, 129 N. W. 856; Farrell v. G. O. Miller Co. 147 Minn. 52, 179 N. W. 566.

Order affirmed.