ANNIE McCROSSIN, AS ADMINISTRATRIX OF THE ESTATE OF JOHN McCROSSIN, DECEASED, v. NOYES BROS. & CUTLER, INC.[1]

June 27, 1919.

No. 21,303.

**Poison — sale of proprietary compound.**

1. In the absence of some statutory obligation, a vendor of another's proprietary compound owes no duty to the purchaser or the public to ascertain whether it contains ingredients that may be harmful or dangerous, if the compound be used for purposes other than those for which it was designed.

**Death by wrongful act — violation of statute not charged.**

2. In this action for wrongful death against the vendor of such compound, the complaint does not charge a violation of section 5039, G. S. 1913, since there are no allegations that Roach Doom, the compound sold and the one causing the death, contained any of the drugs specified in the section or any "commonly recognized poison."

**Poison — duty of manufacturer and vendor to give information.**

3. A manufacturer of an article or compound imminently dangerous in kind owes to the public a positive and active duty to limit the danger, by labeling or otherwise conveying knowledge of the danger. And a

[1]Reported in 173 N. W. 566.

like duty rests upon a vendor who knows of the dangerous qualities of the article sold by him and knows that its label or name does not adequately convey knowledge to the purchaser or public of such danger.

**Complaint insufficient.**

4. The complaint is *held* defective in not alleging that the compound sold was imminently dangerous, and in alleging in the alternative that defendant knew, or in the exercise of due care ought to have known, of the dangerous qualities, and in failing to allege positively the misleading or defective character of the label.

Action in the district court for Ramsey county to recover $7,660 for the wrongful death of plaintiff's intestate. Defendant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action was overruled, Olin B. Lewis, J., and the question presented by the demurrer certified as important and doubtful. From the order overruling the demurrer, defendant appealed. Reversed.

*B. H. Schriber,* for appellant.

*Leonard Ericksson,* for respondent.

HOLT, J.

In overruling the demurrer to the complaint the court below certified that the question involved was important and doubtful, thus affording defendant the opportunity, which it has used, of appealing.

The action is for wrongful death. Plaintiff alleges her appointment as administratrix of the estate of John McCrossin; that defendant is a wholesale dealer in drugs, proprietary medicines and goods, compounds, poisons and supplies; that defendant on December 16, 1916, sold and delivered to the State Board of Control for this state a certain compound known in the trade as "Roach Doom," which it knew was purchased to be used for the extermination of roaches in the state institutions including the State Hospital for the Insane at Fergus Falls; that defendant knew that the nurses and other employees in said institutions were ignorant of the ingredients of said compound and would rely wholly upon the knowledge to be gained from the descriptive label upon the package containing the compound; that there was nothing in the contents of the label which would indicate to the public or to anyone that there was anything dangerous or poisonous in "Roach Doom" or that it would produce sickness or death to anyone who might accidentally or otherwise

partake thereof; that said compound contained substances or chemicals of a poisonous and dangerous nature, and would cause sickness and probably death to such persons as might partake thereof and that "defendant at the time of the sale and delivery of said 'Roach Doom' did then and there know, or by reasonable care ought to have known, that the materials used in the manufacture of said 'Roach Doom' were dangerous and deleterious ingredients and substances, and that said 'Roach Doom' contained certain chemicals and chemical compounds, poisonous elements and substances * * · * and the said defendant did know that said 'Roach Doom,' if not properly used, would cause injury and sickness and probably death to such persons as might use the contents thereof."

It is further alleged that plaintiff's intestate, a railroad employee earning stated wages, had had a nervous breakdown shortly before his death and had been committed for treatment to the State Hospital for the Insane at Fergus Falls and was being cared for there; that while he was there so treated and cared for the employees in the institution distributed Roach Doom so purchased "in the way of roaches," and left the balance of the contents of the package on the kitchen range; that said employees did not know of the poisonous ingredients in the compound, but believed it harmless to human beings; that plaintiff's intestate did not know or appreciate the poisonous character of the substance in the package, but, in the belief that it was fit to eat, placed a considerable portion thereof in his coffee and drank it; that thereby he became sick and poisoned, dying on July 28, 1918, within four hours after its use

The above is believed to contain a summary of the allegations upon which alone there can be any hope of basing a cause of action. There are numerous allegations to the effect that it was defendant's duty as a vendor of compounds to have the same analyzed for deleterious or poisonous ingredients before selling the same, and when such compounds were found to contain substances dangerous to human life to notify the intended users thereof by label or otherwise, and that this duty was not performed by defendant. We consider these allegations and others like them immaterial. It is not alleged that defendant compounded Roach Doom; at most it was a vendor of another's proprietary product. We do not understand the law to be that a vendor of such articles, either at

wholesale or at retail, is required to analyze or ascertain at his peril whether the same contain any dangerous or poisonous ingredients and give warning accordingly. No authority so holds.

There are statutory provisions holding a seller chargeable with knowledge of the character of certain chemical compounds, drugs and medicines, and plaintiff makes some claim that section 5039, G. S. 1913, is applicable. But it is to be noted that this section provides that certain named poisonous drugs and "any other commonly recognized poison" must be labeled so as to indicate the poisonous character thereof. The complaint does not bring Roach Doom within this law, for there is no allegation that the deleterious substance therein was "any commonly recognized poison," or that it was one of the drugs therein specifically named.

Plaintiff must therefore fall back on the proposition that, unaided by any statutory provision in respect to the vending of this compound, there is a common law action for tort stated in the complaint. In 29 Cyc. 479, it is said that the manufacturer or vendor who deals with an article imminently dangerous in kind owes to the public a positive and active duty of employing care, skill and diligence to limit that danger, and this arises from a duty not to expose the public to danger. It is stated that this applies to dangerous chemicals, poisons and dangerous drugs, but that no liability attaches where proper care has been exercised, nor where the injury occurs through a use of the article other than that for which it was furnished. The last statement is too broad for application under all circumstances. The only case cited in its support is Favo v. Remington Arms Co. 67 App. Div. 414, 73 N. Y. Supp. 788, where it no doubt fits the facts. That involved a gun manufactured to withstand the strain when fired with the powder in use at the time the gun was placed on the market, but which burst when the powerful smokeless powder subsequently invented came in use.

Substances or compounds imminently dangerous, no matter for what use intended, may not be placed before the public without due care to warn against the inherent dangers. Of course, there are substances so generally known and recognized as dangerous that no warning need be given, except that furnished by vending them under their true name, such as gunpowder, carbolic acid and the like. But, as a general rule,

the manufacturer or compounder of articles for the market containing deadly ingredients or qualities owes a duty to those into whose hands the articles may come to suitably convey notice of the danger, so that proper precautions may be taken to prevent a wrongful use and consequent injury. This is generally done by naming or properly labeling the package in which the articles are marketed. In Hasbrouck v. Armour & Co. 139 Wis. 357, 121 N. W. 157, 23 L.R.A.(N.S.) 876, the law is stated thus: "A manufacturer or vendor putting out and selling articles inherently dangerous, such as explosives or poisons, without notice to others of their dangerous nature or qualities, or with a misleading notice or negligently in any other way, is liable for any injury to any third person which might have been reasonably foreseen by the manufacturer or dealer in the exercise of ordinary care." If this duty is imposed upon the manufacturer or compounder it would seem equally true that it also falls upon the vendor who knows the dangerous quality of the substance he sells, and who knows that neither the name, label nor appearance thereof indicates its dangerous character. The inquiry then, in respect to this complaint, is:

(1) Are the allegations sufficient as to the imminent danger lurking in Roach Doom? (2) Had defendant knowledge thereof? and (3) Did the label or name on the package not give adequate notice of the character of the substance?

Many articles of common use contain poisonous or deleterious ingredients, but either the quantity is so small, or its taste or smell so repulsive that no great harm is likely to result from its use for other purposes than that intended. There is no direct allegation in the complaint that Roach Doom was imminently dangerous. It is only inferentially to be gathered from the allegation that a "large portion" thereof resulted in the death of plaintiff's intestate.

But we think the most serious defect in the complaint arises from the allegations embraced within the quotation marks above to the effect that defendant knew, or in the exercise of reasonable care ought to have known that Roach Doom contained poisonous or deleterious ingredients. The allegations are in the alternative. If one be true, and is indispensable in stating a cause of action, and the other though true states no cause, they neutralize each other, and demurrer will lie. Anderson v.

Minneapolis, St. P. & S. S. M. Ry. Co. 103 Minn. 224, 114 N. W. 1123, 14 L.R.A. (N.S.) 866. We have above indicated that the law does not impose the duty upon a vendor of another's proprietary compounds to acquire knowledge of their ingredients or qualities. Hence he is not required to exercise due care in that direction, and no cause of action can be predicated upon the failure to exercise due care to obtain such knowledge. This allegation, being joined in the alternative with the one charging actual knowledge, makes the pleading so ambiguous and uncer· tain upon a vital matter as to be demurrable.

It is questionable whether the allegations that .the label failed to reveal the dangerous qualities of the compound are sufficient. The strongest averment is "that there was nothing in the contents of the label describing the ingredients of said 'Roach Doom' which would indicate to the public * * * that there was anything dangerous or poisonous about said 'Roach Doom' * * * to anyone in the use thereof." From the pleading it is to be understood that the label contained the name Roach Doom. It would seem the name itself would be sufficiently suggestive of the danger to life from the preparation. What is destructive of lower animal life is also likely to affect man harmfully. It is not alleged that the label contained anything that would mislead in this respect. Of course, we cannot help out the complaint by accepting as true the statement in respondent's brief that the label conveyed the information that Roach Doom was harmless to human life and took two weeks to effect the doom of the roach.

Respondent and the court below relied on cases like Wellington v. Downer Kerosene Oil Co. 104 Mass. 64; Neiman v. Channellene Oil & Mnfg. Co. 112 Minn. 11, 127 N. W. 394, 140 Am. St. 458, where the substance sold was unfit or dangerous for the purpose for which it was sold, resulting in injury while so ·used. Such was also the case of Gerkin v. Brown & Sehler Co. 177 Mich. 45, 143 N. W. 48, 48 L.R.A. (N.S.) 224, and Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455.

Since it will be necessary to amend the complaint in order to state a cause of action, attention should also be called to the fact that there is no direct allegation that plaintiff's intestate left a widow or any next of kin. No point has been made on that score in this appeal, but we under-

stand such allegations to be essential in an action to recover for wrongful death. Schwarz v. Judd, 28 Minn. 371, 10 N. W. 208.

Order reversed.