VICTORY SPARKLER & SPECIALTY CO. *v.* PRICE.*

(Division A.   Jan. 10, 1927.   Motion to Correct Decree Sustained and Suggestion of Error Overruled Feb. 21, 1927.)

[111 So. 437.   No. 25776.]

1. POISONS.   *Statutes held to furnish no ground for recovery for death of child from eating poisonous fireworks, sold without poison label (Hemingway's Code, sections* 1057, 1061).

Hemingway's Code, sections 1057, 1061, requiring druggist, apothecary, or other person who sells medicine belonging to class known as poisons, to mark package with word "Poison," and prohibiting sale by such a person of poison to minor, refer only to sale of poisons usually sold by druggists or apothecaries, and furnish no basis for recovery for death of child from eating poisonous fireworks, though sold to a minor and without such label.

2. POISONS. *Manufacturer and seller of poisonous fireworks, not attractive to taste, held not liable for death of child eating same.*

Manufacturer and seller of fireworks, containing poison yellow phosphorus, is not liable for death of child from eating them; that not being the purpose for which they were sold, they not being attractive to be eaten, but unpleasant to taste, and such use not being one which reasonably should have been anticipated.

ON MOTION TO CORRECT DECREE.

3. COSTS. *On reversal of decree for complainant, his bond is liable for costs below and on appeal, and decree is against principal and surety (Hemingway's Code, section* 650).

Complainant's bond for costs, given under Hemingway's Code, section 650 (Code 1906, section 941), cover costs below and on appeal, decree for him being reversed; and decree therefor is to be rendered against surety, as well as principal.

*Corpus Juris-Cyc. References: Costs, 15CJ, p. 226, n. 13; p. 227, n. 29; Negligence, 29Cyc, p. 480, n. 98; p. 481, n. 1; p. 492, n. 53; p. 495, n. 60; Poisons, 31Cyc, p. 897, n. 5 New. As to constitutionality, construction, and effect of statute prohibiting or regulation the sale of poisons, see annotation in 30 L. R. A. (N. S.) 522; 9 R. C. L. 700; 2 R. C. L. Supp 858. On the question as to whether anticipation is an element of proximate cause, see annotation in 11 L. R. A. (N. S.) 684; 22 R. C. L. 121; 3 R. C. L. Supp. 1234; 4 R. C. L. Supp. 1456; 5 R. C. L. Supp. 1194; 6 R. C. L. Supp. 1316.

APPEAL from chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Action by I. H. Price against the Victory Sparkler & Specialty Company and others, from a judgment for plaintiff against the named defendant, it appeals. Reversed and judgment rendered.

*Dabney & Dabney,* for appellants.

I. The second count of complainant's declaration alleges failure to comply with sections 1051, 1061, Hemingway's Code, requiring certain poisons to be labeled. Section 1057 refers only to "articles of medicine;" that is, medicines consisting wholly or partly of poisonous

146 Miss.—13.

substances, intended to be used as such. This, of course, cannot be stretched so far as to comprehend *fireworks.*

Again these goods were not sold by this appellant in Mississippi. True, an order was given by Cassino to appellant's salesman and by the salesman mailed to appellant at Elkton, Maryland, but the sale was to be consummated there by delivery free on board cars at Elkton, Maryland, which was done. The contract was performed there. It was a Maryland contract and not a Mississippi contract. For the failure to label those fireworks "poison" there could be no liability on the part of this appellant. *So. Creosoting Co.* v. *Whitfield* (Miss), 94 So. 452, and numerous Mississippi cases there cited; 5 R. C. R. 962.

II. *The goods were not inherently, imminently, and intrinsically dangerous.* The law is well settled that where an article of commerce, a tool, or a place to work, is inherently dangerous, due notice of that fact must be given to guard against any possible injury. Dynamite, for instance, is an inherently dangerous article of commerce, because in the mere handling of it to put it to its intended use, unless it is handled with extreme care, there is danger of an explosion and consequent injury.

Medicines containing poisonous substances are inherently dangerous, because they are intended to be taken into the human system and unless they are properly labeled, serious injury is likely to result from their being put to the intended use. These are examples of things that are inherently, imminently and intrinsically dangerous, and where one misleads another into putting them to their intended use without due and proper notice of the danger, that one would be liable for resultant injuries. 24 R. C. L. page 507, section 800 and cases there cited. The court will observe that in each of the cases cited the buyer was putting the *article to the use for which it was manufactured.*

So much for the wholesaler or retailer. If he knows the article to be inherently or imminently dangerous for the use intended, he is liable for the reasonable and proximate consequences for selling it for such use without warning the buyer by label or otherwise. The chancellor held in this case that neither Cassino nor the Abrahams were liable, and if they were not liable there was no liability on the part of the appellant. ·

III. *There is no causal connection between the manufacture and sale of said fireworks by appellant and the death of this child.* The manufacture and sale of the "spit devils" was not the proximate cause of the death of this child, because said fireworks were made to be exploded and not to be eaten and when the child put the fireworks in its mouth, it was putting them to a use for which they were not intended.

We have not been able to find a case analogous to this, where a child had eaten an article manufactured for a purpose other than food or medicine, where it was undertaken to place liability on the manufacturer under the "attractive nuisance" doctrine.

Carried to a logical conclusion there is no more reason why the manufacturer of buttons or pins or any other article of domestic use should not be held liable for the death of a child of tender years caused by swallowing such article and dying from the effects thereof, than for holding appellant liable for the death of the Price child in the case at bar. Pins are not made to be eaten, neither are buttons, yet a child of tender years is just as apt to stick one in its mouth as it would one of the "spit devils;" nor would a suit against a manufacturer of marbles be countenanced for a moment if a child of tender years should put one in its mouth and choke to death.

Mrs. Price knew these children had the fireworks. She had made them go out of the house because of the supposed danger of fire.

"Q. Mrs. Price, did you know that Sydney had the 'spit devils' or they had been given to him, or were in his possession?"

"A. I *knew* he was in the yard with the other two boys, playing and popping them. I made them go out of the house because I was afraid of fire and Alton said, 'Mamma, they won't set the house on fire; there is no fire—they just pop.'"

And, surely, if she permitted her four-year-old child to have them, a child whose every habit, instinct, and inclination she knew, and did not anticipate that he would undertake to eat them, how much less could this appel- lant anticipate such a thing?

In *Myer* v. *King,* 72 Miss. 1, where a druggist had sold a minor chloroform, contrary to law, from the effects of drinking which the minor died, the court held there was no liability. See, also, *Crowley* v. *Railroad,* 70 Miss. 340; *Pittsburgh Reduction Co. et al.* v. *John Horton, by next friend,* 113 S. W. 647, 18 L. R. A. (N. S.) 905.

In the case at bar the retailer, Abraham, would never have let even the nine-year-old boy have the "spit devils" without his mother's consent, which she gave; and she also knew that they were given to her four-year-old child by his older brother; and she testifies that they were all there playing with them together. Furthermore, no injury would have resulted from the mere playing with them; it was the *eating* of one of them, putting it to a wholly unintended use, that broke the causal connection between the manufacturer and the child.

For authorities on the question of "proximate cause," see 22 R. C. L. 110; section 3, page 113; section 6, page 117; *Bailey* v. *Gas Co.,* 4 Ohio Ct. Rep. 471; *Standard Oil Co.* v. *Wakefield,* 102 Va. 824, 47 S. E. 830, 66 L. R. A. 792.

IV. *Natural and probable consequence.* The eating of said "spit devil" by the child was not a direct, natural and probable consequence of the manufacture and sale,

but was rather a remote probability and a result not to be reasonably anticipated by the appellant. 22 R. C. L., section 8, page 121; section 11, page 124; *McKibben* v. *Bax* (Neb.), 113 N. W. 158, 13 L. R. A. (N. S.) 646; *Stone* v. *Boston, etc., R. R. Co.* (Mass.), 41 L. R. A. 794; *Gould* v. *Slater Woolen Co.* (Mass.), 17 N. E. 531; *Akers* v. *Overbeck,* 41 N. Y. S. 382.

V. *Privity of contract.* There was not such privity of contract between appellant and the child who ate the "spit devil" as to place liability on this appellant for the death of said child. 22 R. C. L., page 110, section 5; 24 R. C. L., page 512, section 804; *Nat'l Savings Bank* v. *Ward,* 25 L. Ed. (U. S.) 621; *Huset* v. *Machine Co.,* 120 F. R. 865, 61 L. R. A. 303; *Motor Works* v. *Shafer* (Ky), 37 L. R. A. (N. S.) 303, automobile; *State* v. *Fox* (Md.), 24 L. R. A. 679, glandered horse; *Schubert* v. *Clerk* (Minn.), 15 L. R. A. 818, step ladders; *Cunningham* v. *House Furn. Co.* (N. H.), 20 L. R. A. (N. S.) 236, stove polish; *Kuelling* v. *Manufacturing Co.* (N. Y.), 2 L. R. A. (N. S.) 303, farm implement; *Peters* v. *Johnson* (W. Va.), 57 L. R. A. 428, a poisonous drug.

It will be seen from the foregoing that in each of the cases above mentioned the injured party was putting the article to the use for which it was manufactured or for which it was intended at the time of his injury. The resultant injury was due to its being put to its intended use.

And this liability of the manufacturer is not confined to articles inherently dangerous by reason of defective construction, or unlabeled poisonous drugs and medicines, which cause injury when put to the use for which manufactured, but also to deleterious foods.

In the case at bar this was not being done, as this four-year-old child was injured by eating one or more of these "spit devils" and putting them to a use never intended and which this appellant could not reasonably have anticipated it would be.

While we find the authorities to be as above stated, in other jurisdictions, we also find that in Mississippi the decisions on this question of the liability of a manufacturer to a third person are even more favorable than elsewhere. *Royal Feed & Milling Co.* v. *Thorn,* 107 So. 282; *Pease & Dwyer* v. *Somers Planting Co.,* 93 So. 673, 130 Miss. 147 at 283.

The only exception that this court has made to this rule—and a proper and reasonable one—is that mentioned in *Pillars* v. *Tobacco Co.* (Miss.), 78 So. 365, which covers a class of articles purposely made—not for human amusement or entertainment, or even for the consumption of live stock—but for *human* consumption and which includes in a general way anything that is made for the purpose of being taken into the human system—foods, beverages, drugs, condiments, confections, and tobacco.

VI. *Efficient, intervening causes.* If there was anything in said "spit devils" that could cause said child to become ill, there were four efficient, intervening, proximate causes of said illness; namely, the nine-year-old boy giving the four-year-old child the "spit devils," the parent's allowing a child of tender years to have said "spit devils" in its possession, the eating of said "spit devils" by said child, and the giving to said child by the mother two doses of castor oil which accelerated the ill effects of said poisoning and without which said child would probably not have died.

The test of intervening responsible causes is stated in 22 R. C. L., section 18, page 132. See, also, *R. R. Co.* v. *Daniels* (Miss.), 99 So. 434; 22 R. C. L. 132, section 18; *Seith* v. *Electric Co.* (Ill.), 24 L. R. A. (N. S.) 978; *Carter* v. *Towne,* 98 Mass. 567, 96 Am. Dec. 682; 22 R. C. L., page 139, section 23, referring to *Harton* v. *Telephone Co.* (N. C.), 14 L. R. A. (N. S.) 956.

Now in the above and foregoing cases while there was negligence on the defendant's part, he being the original

wrongdoer, he was held not liable for the resulting injuries because in each case there had intervened an act of some responsible person that was directly the cause of the injury and without which the injury would not have happened and whose negligent conduct acted as "a non-conductor and insulated the negligence of the original wrongdoer."

In the case at bar the mother permitted her nine-year-old son to have the fireworks in question; knew that he and the four-year-old child were playing with them; made no objections to it, not dreaming, we assume, that the child would undertake to eat it; but, nevertheless, her conduct in this respect was negligent and sufficiently so to act as a non-conductor and insulate whatever negligence this appellant might have been guilty of in the manufacture and sale of these "spit devils."

As to the aggravation of injury by improper or unskillful treatment, see 22 R. C. L. page 115, section 39; *Packet Co.* v. *Hobbs,* 105 Tenn. 29, 58 S. W. 278.

Nor is there any greater liability on the part of the original wrongdoer when the efficient intervening cause arises by reason of the conduct of a child, than an adult. This older brother—nine years old—whose mother had consented to his having the "spit devils," provided he did not spend any money for them—had given them to the four-year-old boy; and this child had eaten them. 22 R. C. L., page 14, section 25 and cases there cited.

No damages are recoverable here, there being no negligence; and even if there was any negligence, it was not the proximate cause of the injury.

*R. L. McLaurin, W. W. Ramsey,* and *T. J. Wills,* for appellee.

Appellant manufactured these "spit devils" to be sold to children for their pleasure and amusement in celebrating holidays. It knew the characteristics and habits of children; that when older brothers and sisters are

amusing themselves with fireworks, the smaller children would accompany them and get possession of the articles with which the larger children were being amused. Appellant knew also the habits of small children to put things into their mouths. Appellant knew that these "spit devils" contained as their principal ingredient yellow phosphorous, one of the most deadly poisons known. With this knowledge, it became the duty of appellant as the manufacturer of this substance, to so mark or label it as to give notice to the public of the poisonous and dangerous character thereof, so that parents and guardians would be sufficiently informed to enable them in the exercise of a high degree of care and caution for the safety of irresponsible infants to protect them against the possession of so highly dangerous a substance.

Appellant, in failing to so label its product, violated that duty which it owed to the public which renders it liable in damages to whomsoever might be injured, as the proximate result of the failure to discharge the duty of giving notice. *Carter* v. *Towne,* 98 Mass. 567, 96 Am. Dec. 682; *Binford* v. *Johnson,* 82 Ind. 426, 42 Am. Rep. 508; *Hasbrouck* v. *Armour & Co.,* 121 N. W. 157.; *McCrossin* v. *Noise Bros. & Cuttler,* 143 Minn. 181, 173 N. W. 566; *Martinson et al.* v. *Neubert et al.,* 185 N. W. 651; 1 Beven "Negligence in Law" (3d Ed.), 52.

The rule of duty of a person who sells or delivers articles, which he knows to be imminently dangerous to life and limb, without notice of its qualities, is stated in the case of *Huset* v. *Case Threshing Machine Co.,* 120 Fed. 865. Our own court quoted from this case with approval in *Pate Auto. Co.* v. *Westbrook Elevator Co.* (1926), 107 So. 552.

We repeat that under the above authority the law imposed upon appellant the duty of giving notice of the qualities of the substance and labelling the poison so that the public might be advised of its dangerous character.

It is true that the "spit devils" were not intended to be eaten. However, they were intended to be placed in the hands of children for their amusement. It is also a fact so well known that it need not be pleaded or proved, that little children are accustomed to placing things in their mouths and especially when that substance is in size and shape such as to inspire in them the thought that it might be something good to eat. *Spengler* v. *Williams,* 67 Miss. 1, 6 So. 613.

As to the duty of persons dealing with dangerous substances, see *Temple* v. *McComb City,* 89 Miss. 1, 42 So. 874; *Hamlin* v. *Gano,* 76 So. 633; *Potera* v. *City of Brookhaven,* 49 So. 617. The law of Mississippi is to be applied in the case at bar. See *St. L., N. E. R. R. Co.* v. *Doyle,* 60 Miss. 977; *A. G. S. R. R. Co.* v. *Carroll,* 11 So. 803; 5 R. C. L. 1039, and note 10.

Appellant owed the duty, in sending these death-dealing missiles into the hands of children, of giving warning to the adults entrusted with the children's care, of the inherent and imminent danger that lurked inside this plaything. It was necessary that they have notice of the dangers incident to the childish tendencies in order that they might protect the irresponsible children from harm. This duty imposed upon the defendant was a common-law duty, growing out of the long-declared and oft expressed principle that a person who sets in motion an agency of danger which a person of ordinary intelligence might anticipate and expect under ordinary circumstances to produce an injury, must exercise a high degree of care to protect against injury resulting therefrom.

It is immaterial where the goods were sold. A person who wrongfully sets in motion an agency of death is responsible for all the injuries that proximately result therefrom.

The position taken by appellant is that the sale of the "spit devils" as a harmless and innocent agency of amusement for children, when within there is lurking a

poison and death, bore no causal relation to the injury and death of the deceased, Sidney Johnston Price. An examination of the authorities cited by appellant shows that these cases support the position that we have taken. We especially call the court's attention to the citation from the *Horton case,* 18 L. R. A. (N. S.) 905.

If the appellant had labeled these "spit devils" *POISON,* thus giving to the world notice of the inherent and intrinsic dangers, and with that notice if N. and H. Abraham had given the "spit devils" to these little children and the mother with that knowledge had permitted them to play with them, and as a result of his childish characteristics Sidney Johnston Price had eaten one and died, the negligence of the mother would have been the proximate cause of his injury and death.

The fourth ground of defense is that the manufacturing and sale of the "spit devils" was for the purpose of being exploded and not to be eaten, and that when the child put the fireworks in its mouth, it was being put to a use for which it was not intended. But having manufactured the article for the amusement of children, appellant should have reasonably anticipated and foreseen that they would come into the hands of little children unless the children were protected against them. With that knowledge that every man is charged under the law with having,—knowledge of the characteristics of children to put things in their mouths and to swallow them, the law imposed upon appellant the duty of foreseeing that just such a thing would happen as did happen, that a child would swallow one of these articles. It cannot now say that the "spit devil" was put to a use that was not intended, when it was evident that it was put to a use that might be reasonably anticipated and a use, when anticipated, appellant would know would result in injury and death.

The dose of oil given by the mother is given as one intervening cause. If appellant had discharged its duty by writing on the carton in which these "spit devils" were

packed, *"POISON, YELLOW PHOSPHOROUS. IN THE EVENT OF POISON DO NOT GIVE OILS,"* she would never have given the oil. If appellant had given the antidote to be given in the event of poison from the spit devil, it would have then enabled her to save her child. Appellant violated every duty that it owed to the public.

The position taken by appellant will shock the sensibilities of every person familiar with the ties of a mother's love, that binds her little children to her heartstrings.

Argued orally by *Moncure Dabney,* for appellant, and *T. J. Wills,* for appellee.

McGowEN, J., delivered the opinion of the court.

I. H. Price, complainant in the court below, appellee here, filed his bill in the chancery court of Warren county against the Victory Sparkler & Specialty Company, and against Vincent Cassino, and against N. and H. Abraham, and many debtors of the Victory Sparkler & Specialty Company.

The bill alleged that on the 6th day of November, 1924, Price had filed a declaration in the circuit court, and finding he could not obtain jurisdiction, filed his bill and attachment in chancery, alleging that the Victory Sparkler & Specialty Company was a manufacturer of an article of merchandise called "spit devils," an explosive of some kind, attractive to children, the ingredients of which were of a deadly poison; that said "spit devils" were not repulsive to the human taste, and, although same were deadly poison, they were not labeled or marked as required by the statutes of Mississippi.

The bill shows that appellant, hereinafter referred to as the company, was engaged in the manufacture of novelties and explosives, especially spit devils, and its factory was located at Elkton, Md.; that Cassino was a general agent in the vicinity of Vicksburg, and sold and

distributed large quantities of spit devils and other fireworks; that said spit devils were inherently and imminently dangerous to human life and health, and were sold to the trade without being marked that they were dangerous to human life and health, and that said manufacturer had full knowledge that said spit devils would be sold and placed in the hands of children of tender years, who had not reached the age of discretion and who would be liable to place the spit devils in their mouths, which deadly poison would cause immediate suffering and death; that these spit devils were sold to Cassino, a wholesaler and jobber, who in turn sold them to N. and H. Abraham, who, on the 29th day of November, 1923, in the course of their business, placed a number of spit devils in the hands of Sidney Johnson Price, the late son of plaintiff, I. H. Price, who was four years of age, not having reached the age of discretion.

Sidney Johnson Price, on account of his tender age, did not know the spit devils were inherently and imminently dangerous, and would cause his death, that, while on his way from the store to the home on Pearl street, he placed one of the spit devils in his mouth, which caused the poisonous substance to dissolve, and, being absorbed, caused him to become immediately sick.

The declaration or bill further charged that, on account of this handling by the manufacturer and these agents of these spit devils, they were made attractive to Sidney Johnson Price, the minor son of plaintiff, and, on the date above stated, caused the death of said Sidney Johnson Price, and that the action of all the defendants was wrongful, gross, wanton, willful, and negligent.

There was a second count in the declaration in which practically the same facts were alleged, but the plaintiff based his cause of action upon the fact that the spit devils were not labeled "Poison" in accordance with section 1057, Hemingway's Code, and also in violation of section 1061 of said Code.

There was an answer on the part of Cassino, the wholesaler, denying liability, and also on the part of the Abrahams, and answers of many garnishees, some of whom admitted indebtedness. The Abrahams denied any knowledge as to the contents of the spit devils, liability for the acts of any other defendants, and likewise denied any indebtedness.

So far as necessary for us to set out the proof, it amounts to about this: That, on the day in question, the Abrahams were retail merchants doing business near the home of Mr. and Mrs. I. H. Price, the father and mother of Alton Price, nine years of age, and Sidney Johnson Price, four years of age. The mother testified that the evening before, Alton, the older boy, teased her about permitting him to purchase some spit devils at the Abrahams store, which she refused; that on the 29th the older boy told her that the Abrahams would give the spit devils to him if she would agree, and she finally consented, and he went to the store, and they were given to him. Her main objection was that she did not want to spend money for them. The children had them in the house, "popping" them, and Mrs. Price told them to go outside, being afraid of fire. It was demonstrated by Alton that there was no danger of fire from these spit devils; that the flashes were electrical in nature, at least were not calculated to start a conflagration.

At dinner time, about the noon hour, Sidney Johnson Price, aged four years, came to the table sick, and left the table, and, staying away longer than his mother thought he ought, she went and found him, and "he had vomited all over his clothes." "The substance from his stomach smelled like wet matches, and smoked like fire, and there were bits of red paper." Mrs. Price said the older boy told her *he* gave the spit devils to the younger boy which Abraham had given him as a treat because the Prices had paid their account.

It developed that the older boy, Alton, was not available as a witness, having died since the above sad occurrence from an accident, not connected with this case.

Mrs. Price's testimony was contradictory as to whether the little fellow said anything or not. In one place she said he was too sick, in another place she said he, meaning the little dead boy, said they, the spit devils, were sweet, and in another place, that he said they were good, and in another place, she said he could not talk. Mrs. Price gave the little fellow castor oil, but she testified he was not able to retain it. The children got the spit devils about 12 o'clock noon, and the younger child died somewhere about 1:30. Dr. Knox, the attending physician, ordered the child to be carried to the hospital, but it died before reaching the hospital, although prompt action was had.

Spit devils like the ones given by Abraham to the children contain yellow phosphorus, a very poisonous substance if taken internally. The ''spit devils'' eaten by the child in this case are described as a ''small disc-shaped article about the size of a nickle and about one-eighth inch thick, wrapped in red paper; a mixture of carbonate of magnesia, red oxide, gum arabic, chloride of potash, and phosphorus, mixed with water, poured into molds, and allowed to dry, and then wrapped in red paper, packed one gross to a carton in sawdust.'' Notwithstanding the mother's statement as to the taste of the articles, we think there is no doubt from this record, but that the spit devils were unpleasant to the taste. Any mixture containing phosphorus would be repulsive.

The proof further showed that all fireworks such as Roman candles, fire crackers, etc., contain more or less phorphorus, and, if eaten by small children, would cause nausea and sickness, and probably death, yellow phosphorus being a very poisonous substance if taken internally by human beings; that the articles were manufactured and sold for the purpose of being used by all people, young and old, especially the former, who desire

to thus celebrate the various holidays observed in our nation, such as Fourth of July, Christmas, and New Year. These spit devils make a popping sound, and emit sparks, the record shows, and we believe, would be especially attractive to children, and were not manufactured and sold as a food or as a medicine, and, up to the time of this tragedy in the Price home, although this company had been engaged in this business of manufacturing fireworks for a number of years, no death or serious accident had occurred, or come to their notice, and it had not come to their notice that any child had eaten or swallowed one of these spit devils. One case of an employee, undertaking to commit suicide by eating six of these spit devils, had come to their attention, but the would-be suicide failed of his purpose.

Soon after the mother discovered the child's illness she, on two occasions, undertook to give it castor oil. The physicians, examined in this case as experts, agreed that castor oil would dissolve the phorphorous, hastening its absorbability, and increasing its poisonous effect upon the human system, and it seems to be agreed that castor oil aids the poisonous effect of yellow phosphorus, and is not given by the leading physicians for this character of poisoning. It was shown that, in its correspondence with its customers, the Victory Sparkler & Specialty Company used a letter head under which was a picture of a little child and the word "Safe" in large type. It is also shown that, before this accident, there was no mark or other sign of any kind on the carton in which the spit devils were sold, and neither was there any mark or sign on the spit devils themselves, that the contents were poisonous and dangerous if taken into the human stomach by ingestion, and that, since this suit was instituted, the company had placed on the carton containing these spit devils the word "Poison."

There was also sent up with the record an original medical journal containing an article on "Phosphorus Poisoning in a Child from the Ingestion of Fireworks,"

by Hugh L. Dwyer, M. D., and Ferdinand C. Helwigs, M. D., of date April 25, 1925, showing several cases of yellow phorphorus poisoning occasioned by spit devils, sons of guns, and devil on the walks, with treatments and experiments on dogs, and a summary. Dr. Bonelli, an expert witness for the manufacturing company, testified that this article was true, and thereupon the whole article was offered and admitted in evidence over the objection of defendant. We shall not advert to the article, because we cannot understand how it has a place in this record as competent testimony against the manufacturer.

It is undisputed in the record that, during the year of the child's death, the company manufactured and sold four hundred fifty thousand gross of spit devils, and had no complaint of injury to any person on account thereof.

We think we have here all of the salient facts of this unfortunate case. Many details are omitted because not necessary to be stated in view of the conclusion reached by us.

The chancellor discharged the defendants Cassino and the Abrahams, but held the Victory Sparkler & Specialty Company liable to plaintiff in the sum of ten thousand dollars.

Appellant assigns many grounds of defense as an entire bar to recovery, in this action, for the death of this child; the main ones being: First, that these goods were not sold in Mississippi, but were sold f. o. b. Elkton, Md. Second, that spit devils are not inherently dangerous. Third, there was no causal connection between the manufacturer and the sale of the fireworks. Fourth, the said manufacturer made a business of marketing these spit devils for the purpose of being exploded, and not to be eaten. Fifth, that the company could not reasonably anticipate that children would put these spit devils in their mouths, chew and swallow the contents of the spit devils. Sixth, there was no privity of contract between the manufacturer and the consumer. Seventh,

that there were four intervening causes of the injury to the child between the time of the manufacturer's negligence, if any, and the death of the child, as follows: (a) That the spit devils were given to a four-year-old child by a nine-year-old boy; (b) that the manufacturer could not reasonably anticipate that the four-year-old child would eat the spit devils, or put same to a use not intended by the manufacturer; (c) the mother allowed the four-year-old child to have the spit devils so that the child ate them; and (d) that the mother gave the child castor oil.

That count in the declaration based on sections 1057 and 1061, Hemingway's Code, cannot be invoked in this case, because section 1057 had reference to articles of medicine and regulating the sale of medicine by labels, etc., and section 1061 is as follows:

"*Poisons—Not to Be Sold to Minors*—A druggist, apothecary, or other person shall not sell or give away any poison to any minor, and for so doing he shall be punished as for a misdemeanor."

There can be absolutely no application to this case of these two statutes with reference to a sale of poisons usually sold by druggists or apothecaries, as they do not refer to a sale of fireworks and many hundreds of other articles in daily use, which, if taken into the stomach, would result in death or great bodily harm. As, for instance, there are many kinds of soap and concentrated lye, which, if taken into the mouth and ingested into the stomach, would occasion great suffering and perhaps death. So that we cannot broaden these statutes to apply to this character of fireworks, such as Roman candles, firecrackers, spit devils, son of guns, and devil on the walks, all of which contain more or less yellow phosphorus, and would endanger the health of people who took them into the stomach through the mouth by ingestion.

The serious objections to the evidence offered in this case on the several points will not be noticed, because,

146 Miss.—14.

in our judgment, the decree of the chancellor cannot be upheld, for the reason that the spit devils complained of in this case did not cause the death of the child by reason of the use of same as was intended by the manufacturer and those who sold them. No danger accrued to the child because of an improper explosion, or being burned on account of the negligence of the **manufacturer, nor is it** shown to be inherently and intrinsically dangerous when put to the use commonly accorded to such playthings, and neither can it be said that the manufacturer could reasonably anticipate that a small child would be attracted to take a spit devil into its mouth, masticate and swallow same, when it was heavily impregnated with yellow phosphorus. The attractive nuisance in this case would not be the fact that a small child would take spit devils into its mouth, but that it would be attracted to eat them as food after having taken them into its mouth.

No doubt most of us can remember those times first in our recollection when we had swallowed some article about the house, or on the playground, such as nickles, small marbles, etc., and the anxiety of our mothers, and the doses of castor oil and others of those blessed remedies, heroically administered; and, in our judgment, many an adventurous child has weathered that period of mischievous investigation only through the watchful care of a mother and a Supreme Overshadowing Providence.

Counsel for appellee make a mistake, in our judgment, in basing their case upon the fact that "the manufacturer knew that small children would be attracted to take the articles in their mouths," and not carrying it to where the nuisance would result in injury to a small child, and that *it would be attractive* to eat. We think the proof in this case shows that yellow phosphorus is not attractive to be eaten. Some stress is laid upon the fact that it was wrapped in red paper. This writer and all counsel know that all firecrackers we ever saw were wrapped in red or other attractive colored paper, but

they were for the purpose of being exploded, and not to be used as food or medicine—''to shoot, not to eat.''

If this manufacturer had manufactured and sold without any warning label, or other precautionary measure an article to be used as a food or medicine which contained yellow phosphorus, as in this case, and same had been taken by a small child, or other person, it being made attractive as a food, then said article would become intrinsically, inherently, and imminently dangerous, and such case would be placed in the long line of cases holding that one who sells and delivers to another an article, knowing at the time that same is dangerous to life or health when put to the intended use, without giving along therewith notice of the dangerous nature thereof, is held to be liable for any injurious result therefrom and the probable consequences of putting same to a use not intended. But this case does not fall within that class, for the reason that the spit devils were not manufactured and sold as articles of food or medicine, or to be taken into the stomach at all.

If, for instance, these spit devils had exploded because of negligence in construction, and there had been a resulting injury, and the manufacturer could have, or should have, foreseen the consequences of putting such goods upon the market, endangering the life or health of children or others thereby, then the cases cited by appellee, and no doubt adopted by the court below, would be effective here to sustain this decree. But we are persuaded that the manufacturer could not have foreseen that a small child, such as would be intrusted with spit devils, would not only take them into its mouth, but would eat and swallow them, and, in the next place, it is clear to us that as a matter of common sense these spit devils were not put to the use intended by the manufacturer when he sent these goods out to the public, and that it was not intended, and they were not made attractive to be eaten and ingested by a small child.

Counsel for appellee cites *Binford* v. *Johnson,* 82 Ind. 426, 42 Am. Rep. 508, where defendant sold to two boys, ten and twelve years old, cartridges with powder therein, well knowing the dangerous character of the same, and the older boy laid down the pistol with one cartridge in it, and the younger boy picked it up and discharged it, inflicting a wound on the other boy, from which he died. It was there held that the complaint so charging was good on demurrer, and it was further held that the person who so places in the hands of children dangerous explosives is guilty of an actionable wrong. Mr. Justice Elliott reasons out the liability of those who place dangerous articles in the hands of small children, attracting them thereby to become injured, and further that the intervention of other parties does not preclude a recovery, citing the celebrated Squib case of *Scott* v. *Shepherd,* 2 W. Black, 897, firmly establishing the rule that the original wrongdoer may be held responsible, even though there be an intervening agency, the second wrongdoer, and also citing *Carter* v. *Towne,* 98 Mass. 567, 96 Am. Dec. 682, and many other cases.

In all the cases cited, there is no effort to hold the manufacturer liable, or any case made out where an explosive article is eaten instead of doing injury by its explosion. *Carter* v. *Towne, supra,* is a case where the court held that one who sells and delivers gunpowder to a child of tender age, knowing that the child had neither experience nor knowledge of its use, and was an unfit person to be intrusted with it, is responsible for the injury sustained by the child on account of the explosion of the gunpowder, in ignorance of its effect and use, and this is true, although the vendor was licensed to sell the gunpowder. Justice Gray cited three English cases and appealed to the well-established rule laid down by Lord Ellenborough in *Townsend* v. *Wathen,* 9 East, 280, as follows: "Every man must be taken to contemplate the probable consequence of the act he does." The antithesis might be stated that no man is held to contemplate

the improbable consequence of the act he does. There might be isolated exceptions to the rule thus stated.

Counsel for appellee also cites cases in Mississippi in which injuries occurred from the use of electricity on uninsulated wires, especially the cases of *Spengler* v. *Williams,* 67 Miss. 1, 6 So. 613; *Temple* v. *McComb City,* 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, and *Potera* v. *City of Brookhaven,* 95 Miss. 774, 49 So. 617, in which the liability was based upon the fact that small children should be protected from deadly currents negligently permitted to be in the open where children were likely to go, and, on account of their tender years, were not old enough to fully appreciate the death-dealing danger lurking in the wires charged with electricity, and in other cases cited, where the court held that appellant, who set in motion a dangerous agency, would be charged with knowledge of the venturesomeness of young boys, and would be held liable for negligence in piling timber so as to create a death trap for small children.

In our opinion, none of these cases in Mississippi have application here, because in the instant case the injury was one unusual in its nature, and the articles were not manufactured for food purposes, nor could the manufacturer have foreseen that small children would ingest these poisonous substances. Neither could the manufacturer have known that they would be put to this abnormal, unusual use, not anticipated nor intended by the manufacturer.

Notwithstanding our sincere sympathy for these stricken parents, we think we are not allowed to yield to that natural sentiment and allow damages to those thus stricken in an abnormal, unusual case, which we shall term an unfortunate misadventure, which could not have been reasonably anticipated, nor could it be said that the spit devils were put to the use intended by appellant; and the ingredients of the spit devils, wrapped in attractive red

paper, were not such as to attract even a small baby to eat and swallow yellow phosphorus.

We think we are fully sustained in the view thus taken after examination of authorities with the diligent aid of counsel on both sides of this case. The rule is, as heretofore stated, and in which we are sustained by the following citation from Corpus Juris, and the authorities there cited 24 R. C. L. p. 507, section 800:

"It is well established that one who sells and delivers to another an article which he knows to be dangerous or noxious, without giving notice of its perilous qualities and nature, is liable for an injury that may result therefrom to the buyer."

And the general rule applicable to this case is found in 22 R. C. L., p. 121, section 8, as follows:

An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. *But an injury which could not have been foreseen nor rea sonably anticipated as the probable result of an act of negligence is not actionable* (italics ours), and such an act is either the remote cause, or no cause whatever, of the injury."

And in 24 R. C. L., section 800, it is held:

"If the dealer knows that the article is inherently or imminently dangerous, or is highly explosive, or if he conceals or misrepresents its qualities, or warrants or represents it to be safe for the use intended, when it is not, there is no reason why he should not be held chargeable with reasonable and proximate consequences of his act in selling it without notice of the danger *in its use.*" (Italics ours.)

And in 24 R. C. L., section 801, it is held:

"If a dealer or merchant, whether he be a wholesale dealer, or a retail dealer, or the original buyer of the article, or the person who makes the sale to the consumer, knows that the article is inherently or imminently dan-

gerous *in the use for which it is intended,* because of its inflammable or explosive qualities, it is his duty to label or mark the package containing the article in such a way as to indicate its dangerous contents."   (Italics ours.)

We are of the opinion that the plaintiff appellee can not recover in this case, and that the decree of the court below should have been for the appellant.

Reversed, and judgment here for appellant.

*Reversed.*

### On Motion to Correct Decree.

Appellant, the Victory Sparkler & Specialty Company, moves the court for a decree against the sureties on appellee's cost bond given in this cause in the chancery court, and for an order to direct that all costs accrued in this court be taxed against the appellee, I. H. Price, and the sureties on his bond.

In the lower court, appellee, I. H. Price, executed and filed a cost bond in the sum of two hundred fifty dollars, with two sureties thereon, the applicable stipulations thereof being as follows:

"Now, if the said I. H. Price, principal herein, and his sureties, shall pay all costs that may be adjudicated against him in this case, and shall otherwise discharge all of the requirements of the court, then this obligation shall be null and void; otherwise, it shall remain in full force and effect."

The decree of the court below awarded damages in the sum of ten thousand dollars to appellee against appellant, the Victory Sparkler & Specialty Company, who prosecuted an appeal to this court, and at this term of the court, on January 10, 1927, this court reversed the decree of the court below, and rendered a decree here dismissing complainant's bill.   In the prosecution of the suit it was necessary for appellant to present its cause here in order to be freed from the erroneous judgment entered against it in the lower court.   Section 650, Hemingway's Code (section 941, Code of 1906), is as follows:

"Security for costs may be given by recognizance entered into in open court, or by written undertaking indorsed on or filed with the papers in the cause, or by a deposit with the clerk of the court of the amount in cash or a certified check on any solvent bank in this state, and the judgment, when rendered against the plaintiff or complainant, shall be rendered against the surety, as well as against the principal or complainant, and execution may be issued as in other cases for all costs for which the plaintiff or complainant may be liable in the cause."

By the reversal of the decree, the complainant in the court below became liable for the costs accrued therein, and the costs accrued here. This question was before the court in the case of *Martin* v. *Kelly,* 59 Miss. 652, wherein Chief Justice CAMPBELL, as the organ of the court, said:

"The surety for costs is liable for the costs accrued in the case in this court, to which the defendants below were compelled to resort to free themselves from the erroneous decree against them, which the complainant was enabled to obtain by means of the security for costs, but for which his case would have been dismissed. There is nothing in the statute, or the obligation assumed by the surety, limiting his liability to the costs of the court in which the suit was pending when the security for costs was given, and justice requires that he be held liable for all the costs accrued in the case and adjudged against his principal. That is the extent of his undertaking. *Smith* v. *Lockwood,* 34 Wis. 72; *Traver* v. *Nichols,* 7 Wend. (N. Y.) 434; *Dunn* v. *Sutliff,* 1 Mich. 24."

*The motion in this case is sustained.*