## BOYD et al. v. FRENCHEE CHEMICAL CORPORATION.

### No. 1542.

District Court, E. D. New York.

Feb. 6, 1941.

Haight, Griffin, Deming & Gardner, of New York City (Arthur O. Louis, of New York City, of counsel), for defendant.

Humes, Buck, Smith & Stowell, of New York City (John F. Kiernan, of New York City, of counsel), for plaintiffs.

CAMPBELL, District Judge.

This is a motion made by the defendant to dismiss the complaint on the ground that it does not set forth a claim upon which relief can be granted. In the alternative the defendant asks for summary judgment.

The plaintiff S. Rodman Boyd is the Pennsylvania administrator of the goods, chattels and credits of Ronald Mrozinski deceased who was nineteen months of age at the time of his death.

The plaintiffs Walter Mrozinski and Jennie Mrozinski are the parents of the decedent.

The complaint alleges that the defendant was the manufacturer and/or distributor of a product known as "Hollywood Fabric Cleaner", and prior to October 2nd, 1939, delivered to various persons in the City of Philadelphia, Pennsylvania, including a firm known as "Kitty Kelly", for sale and resale at retail a quantity of the said product "Hollywood Fabric Cleaner", and one package or container of said product was purchased by the plaintiffs Walter Mrozinski and Jennie Mrozinski from said firm known as "Kitty Kelly" and taken to their home.

That on or about October 2nd, 1939, at said City of Philadelphia the said child Ronald Mrozinski drank a portion of the said product known as "Hollywood Fabric Cleaner", and became fatally ill and died on October 4th, 1939.

That at all the times hereinafter mentioned the law of the State of Pennsylvania provided and at the time of the making of said complaint still provided, among other things, as follows, Act of May 17, 1917, P. L. Act No. 119, Section 17, Page 208, 35 P.S.Pa. § 901,

"Section 17. Poisons.—That a poison, in the meaning of this act of Assembly, shall be any drug, chemical, or preparation, which, according to standard works on medicine, toxicology, or materia medica, is liable to be destructive to adult human life, in quantities of sixty grains or less; or any mixture, compound, or preparation containing, in sixty grains or less, a sufficient quantity of any such drug, chemical, or preparation as to make the same liable to be destructive to adult human life, if sixty grains or less were to be taken.

"No person shall sell at retail or dispense any poison, except as herein provided, without affixing to the bottle, box, vessel, or package containing same a label, printed or plainly written, containing the name of the article, the word 'poison,' and the name and place of business of the seller; nor shall he deliver poison to any person without satisfying himself that the purchaser under-

stands the poisonous nature of the article, and that such poison is to be used for legitimate purposes."

The complaint further alleges that the said product so sold and delivered by the defendant under the name "Hollywood Fabric Cleaner" was a poison within the meaning of the last hereinbefore quoted Act, and that neither the label, nor the package, or container in which said product was contained bore the word "poison", or any other warning of the dangerous and perilous nature of the said product, and the ingredients therein contained, nor did the retailer of said product inform the purchasers thereof of the poisonous and perilous nature of said product and its ingredients.

■ It seems obvious to me that the complaint in the action at bar is drawn on the theory that the defendant may be shown to have been negligent in that it failed to label the product "Hollywood Fabric Cleaner" as "poison" under the Pennsylvania Law, Act of May 17, 1917, P.L. Act No. 119, Page 208.

Any right of action that plaintiffs may have is governed by the law of Pennsylvania. Spokane & Inland E. R. R. Co. v. Whitley, 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060, L.R.A.1915F, 736.

No affidavit of the parents is presented showing the circumstances under which the child drank any of the product.

The very name of the product must have brought home to the parents the knowledge that it was a "fabric cleaner", and not something that their child should drink, and certainly the word "poison" even if it was carried on the package, or container, would not have deterred a nineteen month old infant from drinking the substance.

To clearly understand the Pennsylvania statute here in question we should read not only the two paragraphs of Section 17 quoted in the complaint, and supra, but also the third paragraph of that Section, 35 P.S. Pa. § 902, which provides for "Sales of poison to be registered", and the whole Act. The title or preamble of the Act reads "An Act To regulate the practice of pharmacy and sale of poisons and drugs, and providing penalties for the violation thereof; defining the words 'drug' and 'poison;' and providing for the appointment of a board which shall have in charge the enforcement of said law, and the power to make rules and regulations for the enforcement of said law; and providing for the purchase of samples of ·drugs ·for determining their quality, strength, and purity."

After that are the definitions of the terms, "pharmacy", "drug", "pharmacist" and "assistant pharmacist", found in Section 1, 63 P.S.Pa. § 291, followed by provisions relating to the Board of Pharmacy for registration and licensing of "pharmacists", and "qualified assistants".

■ The purpose and intent of the Statute in question is to regulate and control the compounding of physician's prescriptions, preparing drugs, and dispensing them, or other products of the apothecary's calling, including poisonous substances, as an incident to the practice of pharmacy, and not to regulate, or control the sale of—cleaning preparations.

Section 13 of the Act, 63 P.S.Pa. § 319, reads as follows: "Section 13. That hereafter it shall be unlawful to sell drugs, medicines, or poisons at retail, or to compound physicians' prescriptions, or to conduct a pharmacy, or to practice as a pharmacist or assistant pharmacist, except in compliance with the provisions of this act of Assembly: Provided, however, That nothing in this act of Assembly shall be so construed as to interfere with students of pharmacy, or other employes in a pharmacy, from performing such duties as may be assigned to them by and under the supervision of a pharmacist or assistant pharmacist: And provided further, That the compounding of physicians' prescriptions, or the dispensing and selling of poisons at retail, shall not be permitted except under the strict supervision and in the presence of a pharmacist or assistant pharmacist.

"Nothing in this act of.Assembly shall be construed so as to prevent an authorized practitioner of medicine from administering or dispensing such drugs to bona fide patients as he or she shall deem necessary: Provided, however, That such drugs so administered or dispensed shall conform to the standards of strength, quality, and purity as fixed by the laws of this Commonwealth; nor prevent the sale or manufacture of proprietary medicines; nor prevent storekeepers from dealing in and selling commonly used household drugs when ·the same are offered for sale or sold in packages which have been put up ready for sale to consumers by pharmacists, manufacturing pharmacists, wholesale grocers, or wholesale druggists. Any person violating the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be sentenced to pay a fine of not less than fifty dollars ($50.00) nor more

than five hundred dollars ($500.00), or imprisonment for not more than one year, or either or both, in the discretion of the court."

■■ From a reading of the whole Act it seems clear to me that the word "poison", as used in Section 17 thereof, cannot be construed as referring to a cleaning fluid like defendant's product, but only to a substance to be sold at retail in connection with the practice of pharmacy or dispensed as an incident thereto.

No cases in the Courts of Pennsylvania arising under the Act in question or its predecessor have been cited by either party, but the Attorney General of the Commonwealth of Pennsylvania in construing the predecessor statute to the Act of May 17, 1917, arrived at the same conclusion. In re Phosphorus Matches, 21 Pa.Dist.R. 554.

In that opinion he was dealing with phosphorus matches, and although they were poisonous he held that they were not within the prohibition of the statute and were not required to be labeled as poisonous, and said at pages 555 and 556 of 21 Pa. Dist.R.,

"It is apparent from the preamble and the body of the act that it relates to the qualifications and business of apothecaries or pharmacists and to the sale of such drugs and poisons as are usually sold or dispensed in drug stores.

"While the definition of poison in the first part of section 10 is broad enough to cover phosphorus, as it is described in the 'National Standard Dispensatory,' yet the act nowhere indicates that it is intended to apply to merchants who are not dealing in drugs or medicines and who may have articles, such as matches, which contain poison, but which were not intended to be eaten or used for medical purposes or drugs.

"If this act were construed to apply to phosphorus contained in articles of merchandise not intended or used as drugs or medicines, it might then be said with great force that it would violate section 3 of art. III of the constitution of Pennsylvania [P. S.], which provides: 'No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title,' because there is no notice in the title of the intention to regulate the sale of such articles of merchandise.

"I am therefore of opinion that matches containing phosphorus are not within the purview of 'poisons,' as that term is used in the Act of May 24, 1887, P.L. 189."

That opinion accords with the conclusion arrived at in other states with respect to "poison label" statutes. Levin v. Muser et al., 110 Neb. 515, 194 N.W. 672; Victory Sparkler & Specialty Co. v. Price, 146 Miss. 192, 111 So. 437, 50 A.L.R. 1454.

The case of Osborne v. McMasters, 40 Minn. 103, 41 N.W. 543, 12 Am.St.Rep. 698, cited by plaintiff is not in point, because as I have found the Statute of Pennsylvania in question did not apply to defendant's product.

Plaintiffs contend that by their complaint they charge the defendant with violation of both the common law and a statutory duty to label a deadly poison and thus warn those for whose use it was intended, of its inherently dangerous character.

That contention is not in accord with my reading of the complaint in the action at bar, which it seems obvious to me is drawn on the theory that the defendant may be shown to have been negligent in that it failed to label the product "Hollywood Fabric Cleaner" as "Poison" under the Pennsylvania Law, Act of May 17, 1917, P.L. Act No. 119, Page 208.

However, as plaintiffs contend that the complaint in the action at bar does also allege a cause of action of violation of the common law and both sides have fully briefed the question from that angle nothing would be served by refusing to consider the complaint as attempting to allege a cause of action under the common law, and under the Statute.

Defendant contends, and I find properly, that in addition to those disclosed in the pleadings the moving affidavits show the following facts.

1. The Pennsylvania law does not require "Hollywood Fabric Cleaner" to carry a poison label, the Pennsylvania State Board of Pharmacy specifically stating, "We have no law or regulations in regard to this type of products."

2. The "Kitty Kelly" shop where the infant's parents purchased a bottle of "Hollywood Fabric Cleaner" is a retail shoe store and is not a pharmacy.

3. "Hollywood Fabric Cleaner" is a well-known shoe and fabric cleaner and is sold as such.

4. It consists of a mixture of approximately 75%, by volume, of ethylene dichloride and 25%, by volume, of carbon tetrachloride. It is known commercially as "Chlorosol."

5. It is not offered for sale for, nor intended for, human or animal consumption, nor as an insecticide or fungicide, nor for agricultural use.

6. It is not a caustic acid, caustic alkali, mineral or chemical salt, nor the other material referred to in the Act of May 7, 1923, No. 105, of the Commonwealth of Pennsylvania, 35 P.S.Pa. § 931 et seq., nor is it a preparation of nor does it contain any of the aforesaid matter.

7. It has a pungent odor and when but a minute quantity touches the lips, it gives a sharp, burning sensation which would be painful to a small child. It is extremely unpalatable and if consumed, will cause nausea.

8. The bottle and container are distinctly labeled as a shoe and fabric cleaner and prominently display the symbol of a pair of women's pumps.

9. The bottle is fitted with a metal screw cap, bearing the symbol of a pair of women's pumps, and sealed with a plastic compound.

10. It is substantially the same as other cleaning agents marketed by other dealers. No cleaners of this type bear a poison label, and it is not the practice of the trade to so label such products.

Counsel for plaintiffs errs in his contention that the "Hollywood Fabric Cleaner" contains, among other ingredients, "Chloroform", a highly poisonous and inherently dangerous substance.

There is no "Chloroform" in the cleaner, and the error probably arose through confusion in names, as the product of which the cleaner is composed is commercially known as "Chlorosol".

The contention of the plaintiffs' counsel that "Hollywood Fabric Cleaner" was attractive to children, has no sound basis either in size, shape, or the color of its label, and it certainly was not made for the use, or amusement of children.

That the defendant used care to call attention to the product which it put upon the market, and its intended use, requires only a view of the label on the bottle, and the printing on the container, on both of which there is printed on a green background the name of the product, a pair of women's pumps, and other matter calling attention to the intended use of the product.

The defendant as the manufacturer or seller of "Hollywood Fabric Cleaner", an article of merchandise designed and fitted for a specific use, can be held liable only when it is used for the purpose for which it was made or sold. Huset v. J. I. Case Threshing Mach. Co., 8 Cir., 120 F. 865, 61 L.R.A. 303; Victory Sparkler & Specialty Co. v. Price, supra.

Clearly "Hollywood Fabric Cleaner" was not made or sold to be taken internally by humans or animals.

Plaintiffs offered in support of its contentions the following cases.

Victory Sparkler & Specialty Co. v. Latimer et ux., 8 Cir., 53 F.2d 3, 5. In that case fireworks put upon the market for the amusement of small children and others, known as a "spit devil", containing a deadly quantity of yellow phosphorus shaped like a lozenge, and wrapped in plain red tissue paper, were in view of their appearance, size and character, held to offend. The Court said "One who deals with children must anticipate the ordinary behavior of children, and, in considering whether or not the defendant was negligent in placing these articles in the channels of trade, it must be remembered that they were intended for the use and amusement of children, as well as others. In the hands of children they were imminently dangerous, and the injury might reasonably have been anticipated."

That case is clearly distinguished from the case at bar, in which the cleaner was not made either for the amusement, or use of children, and could not be taken internally without opening the bottle, and certainly was not an "attractive nuisance".

New York Eskimo Pie Corporation v. Rataj et al., 3 Cir., 73 F.2d 184. That case relates to the placing of dry ice, carelessly thrown away, in bottles by children with disastrous results, and is clearly distinguished from the case at bar, in which the product is placed in a closed bottle from which no portion of the contents may be removed without opening the bottle, which is plainly labeled fabric cleaner.

I entirely dissent from the reiterated statement of counsel for plaintiffs that the product was of such a nature as to be attractive to children, on the contrary, I can find no feature of any kind which made it

attractive to children, and therefore the manner in which it was labeled was sufficient to apprise anyone, who could read, of the character of the contents of the bottle, and its unfitness for internal use. The other cases cited by plaintiffs under the contention of its attractiveness to children require no further consideration.

Palsgraf v. Long Island R. R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253, does not relate to any product put on the market for sale, and is not in point.

McCrossin v. Noyes Bros. & Cutler, 143 Minn. 181, 173 N.W. 566, 567. That case related to the sale of a product known as Roach Doom, and the Court said "But, as a general rule, the manufacturer or compounder of articles for the market, containing deadly ingredients or qualities, owes a duty to those into whose hands the articles may come to suitably convey notice of the danger, so that proper precautions may be taken to prevent a wrongful use and consequent injury. This is generally done by naming or properly labeling the package in which the articles are marketed."

That case is clearly distinguished from the case at bar, in which the label shows that the contents were to be used for cleaning fabrics and the uppers of shoes, and certainly not for human or animal consumption, and it is common knowledge that fabric and shoe cleaners are dangerous if taken internally.

Plaintiffs contention that violation of a statute is evidence of negligence, requires no extended consideration, as I have held that there was no statutory duty on the part of the defendant to use the word "poison" on the label on the bottle, or on the container.

Likewise there is no necessity to go into the question of contributory negligence, as that does not enter into the question here presented, and would only be a defense to be considered by a jury if the case at bar was permitted to go to a jury.

The complaint does not state a claim upon which relief can be granted.

Plaintiffs cannot succeed in this action whether it be under the statute or common law.

Summary judgment in favor of the defendant against the plaintiffs is granted.

Settle judgment on notice, and submit proposed findings of fact, and conclusions of law in accordance with this opinion.